J. THOMAS ANTONELLI, JR.

v.

HARRIET GREEN ANTONELLI

No. 0950-89-2

HARRIET GREEN ANTONELLI

v.

J. THOMAS ANTONELLI, JR.

No. 1020-89-2

Decided September 25, 1990

COUNSEL

Ralph L. Axselle, Jr. (Timothy J. Healy; Axselle, Hundley, Johnson & Harris, on briefs), for appellant (Record No. 0950-89-2), and appellee (Record No. 1020-89-2), J. Thomas Antonelli, Jr..

James B. Thorsen (Thorsen & Page, on briefs), for appellee (Record No. 0950-89-2), and appellant (Record No. 1020-89-2), Harriet Green Antonelli.

OPINION

**WILLIS, J.**—J. Thomas Antonelli, Jr., appeals the judgment of the trial court denying his petition for a reduction in his child support obligation. He argues that the trial court imposed an erroneous standard of proof on him. We agree and reverse the judgment of the trial court.

Mr. and Mrs. Antonelli were divorced by a final decree entered May 5, 1987. That decree affirmed, ratified and incorporated the parties' property settlement agreement requiring Mr. Antonelli to pay $400 per month for the support of each of the parties' four minor children, a total of $1,600 per month. The decree referred all future matters concerning support to the Henrico County Juvenile & Domestic Relations District Court.

In 1972, Mr. Antonelli began work for Wheat First Securities as a management trainee. In 1979, desiring to change from administration to sales, he left Wheat First and took a job in marketing for SEC Computer Company. In 1983, he returned to Wheat First to develop and market a new program called Man-

aged Accounts, which involved handling portfolios of stock invest-
ments. Wheat First later terminated this program. At the request
of his supervisor, Mr. Antonelli remained with Wheat First as an
administrative employee. However, he was dissatisfied and wanted
to return to sales. He did not seek a brokerage position with
Wheat First, but in July, 1987, began employment at Legg Mason
as an investment broker. He had been earning $48,000 to $52,000
per year at Wheat First. He expected to maintain that level of
earnings as a broker, but he entered the sales field at an inoppor-
tune time. The stock market crash in October, 1987, greatly de-
pressed the stock brokerage business, and his earnings fell below
his expectations. In 1988, he earned $39,000. His projected earn-
ings for 1989 were $30,000. He found it necessary to borrow
money to maintain his child support payments and to support
himself.

In January, 1989, Mr. Antonelli filed a petition in the Henrico
County Juvenile & Domestic Relations District Court, alleging a
material change in his financial circumstances and seeking a re-
duction in his child support obligation. That court reduced his
support requirement to $830 a month. On appeal, the trial court
denied Mr. Antonelli's petition and ordered that his $1,600 per
month obligation remain in force. Citing *Edwards v. Lowry*, 232
Va. 110, 348 S.E.2d 259 (1986), the trial court ruled that to pre-
vail Mr. Antonelli was obliged to prove "there has been a material
change in circumstances . . . [and] that the lack of ability to pay
is not due to any voluntary act or neglect by [him]." The court
found a material change in Mr. Antonelli's circumstances. It fur-
ther found that his reduction in income resulted from his leaving a
salaried administrative position at Wheat First Securities for a po-
sition as a stockbroker at Legg Mason, that this change in em-
ployment was a voluntary act on his part, and that he had ac-
cepted the risk involved in being a commissioned stockbroker. The
trial court found that Mr. Antonelli had not met the requirements
of *Edwards* and denied his petition.

In *Edwards*, the petitioner sought exoneration from his child
support obligation because he had been fired from his job for
stealing. The Supreme Court reversed a decree reducing his obli-
gation, and held as follows:

In order to invoke the court's continuing jurisdiction to modify its decree, the party seeking a change has the burden of proving, by a preponderance of the evidence, a material change in circumstances justifying a modification of the decree. *Hammers v. Hammers*, 216 Va. 30, 31, 216 S.E.2d 20, 21 (1975); *Crosby v. Crosby*, 182 Va. 461, 464, 29 S.E.2d 241 (1944). As we further noted in *Hammers*, a party seeking a reduction in support payments has additional burdens: "[H]e must make a full and clear disclosure relating to his ability to pay. He must also show that his lack of ability to pay is not due to his own voluntary act or because of his neglect." *Hammers*, 216 Va. at 31-32, 216 S.E.2d at 21. In both *Hammers* and *Crosby*, the change in circumstances relied on to obtain a reduction in support payments was the former husband's failure to pay his federal income taxes, which were greatly in arrears. Each of those cases, like the case now before us, involved an effort by a former husband to shift to his wife or child the consequences of his own wrongdoing.

In the case before us, it is undisputed that John Lowry's diminution of income was the direct consequence of his voluntary, wrongful act. After receiving a direct warning from his employer following a previous theft, he was fired for stealing again. He failed to meet the burden, required by the rule in *Hammers*, of showing himself free of responsibility for his change in circumstances, and was not entitled to a reduction in support based upon the diminution of income caused by the loss of his job.

*Id.* at 112-13, 348 S.E.2d at 261 (footnote omitted).

In a footnote to *Edwards*, the Supreme Court said:

We have not been called upon to decide, and do not now decide, the question presented by a voluntarily-incurred reduction of income for a purpose ultimately beneficial to the payee, such as a change to a new occupation offering brighter prospects in the long run, or education and training undertaken to qualify the payor to enter such a new career.

*Id.* at 113 n.*, 348 S.E.2d 261 n.*.

The question posed in the foregoing footnote is central to this case and is one of first impression in Virginia. However, we find authority from some of our sister states.

In *Rutledge v. Rutledge*, 96 Mich. App. 621, 293 N.W.2d 651 (1980), the petitioner left his job at legal aid and entered private law practice. His salary at legal aid was $24,000 per year, but his projected income from his first year of private practice was $2,510. Holding that a reduction in child support should have been granted, the Court of Appeals of Michigan held:

A voluntary reduction in income, if made in bad faith or with willful disregard for the interests of the dependent child will not warrant a modification of support payments. Absent bad faith or such a willful disregard, however, the fact that defendant's reduction in income was voluntary is not an adequate reason for refusing modification. An individual should be allowed to make good faith changes in his employment and his child should share in the financial inconvenience or hardship, just as the child would if the family had remained together.

*Id.* at _____, 293 N.W.2d at 653.

In *Fogel v. Fogel*, 184 Neb. 425, 168 N.W.2d 275 (1969), the support obligor left his job because of dissatisfaction with his employer. He undertook training to become a real estate salesman and secured a license. He anticipated future financial success but experienced a period of greatly reduced earnings, which was the basis for his petition for reduction. Holding that he was entitled to the reduction, the Supreme Court of Nebraska held:

There is no willful misconduct or neglect involved in the present application. Appellee did not leave his former employment for the purpose of evading his responsibility but because of circumstances which eventually could have effected his income. The record would justify an inference that he made serious efforts to establish himself in employment with better prospects for the future.

A divorce decree does not freeze a father in his employment. One may in good faith make an occupational change

even though that change may reduce his ability to meet his financial obligation to his children. . . . Ordinarily, a man makes a change in his occupation with the hope of improving his prospects for the future. When parents are living together the standard of living of the children rises or falls with the changes in the father's fortunes. Should this readjustment be any different because divorce has separated them physically? We think not, unless the move is made to avoid responsibility or made in bad faith.

*Id*. at ___, 168 N.W.2d at 277.

In *Crosby*, *Hammers*, and *Edwards*, the financial insufficiency underlying the petitions for reduction derived from wrongdoing or neglect. The trial court made no such finding here. Mr. Antonelli claimed to have made a bona fide employment change from which he expected career satisfaction and financial success. His financial disappointment may have been due as much to unusual and catastrophic market conditions as to the change itself. There is nothing in the evidence to suggest that he was motivated by a desire to diminish his ability to provide for his children.

*Edwards* requires an applicant for reduction to show that his lack of ability to pay is not "due to his own voluntary act or because of his neglect." 232 Va. at 112, 348 S.E.2d at 261. Any career change, any investment, is by its nature a "voluntary act." We do not perceive the law defining obligations of child support to be intended to frustrate ambition or enterprise. Therefore, we construe the term "voluntary act" to describe a willful act done for the purpose of frustrating the feasibility or enforceability of the support obligation. Thus, an applicant who shows a reduced ability to satisfy his obligation, which is not due to his wrongdoing, his neglect of his affairs, or his intentional diminution of his financial capacity other than in connection with a bona fide and reasonable business undertaking, is entitled to have that reduction considered along with the other usual factors, including his general earning capability, in determining his child support obligation.

The trial court found that Mr. Antonelli had demonstrated a material change of circumstances. It was silent as to the required corollary finding of whether this change justified the reduction sought. The trial court found that Mr. Antonelli's career change was a voluntary act. It should also have determined whether that

change was a bona fide and reasonable business undertaking or whether it was for the purpose of reducing his ability to support his children. It should have determined whether his financial reverses resulted from his wrongful act or neglect. It should have considered the case findings, along with the other usual factors, in ruling on Mr. Antonelli's petition. Its failure to do so was error.

For the foregoing reasons, the judgment of the trial court is reversed, and this case is remanded to it for further proceedings.

Mrs. Antonelli appeals the refusal of the trial court to award her attorney's fees. An award of attorney's fees is tied to the decision on the merits of the case. Therefore, the judgment of the trial court denying attorney's fees is vacated and remanded for reconsideration by the trial court in the light of its reconsideration of the merits of the petition for reduction in child support.

*Reversed and remanded.*

Coleman, J., and Cole, J., concurred.