COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued at Alexandria, Virginia


JILL MANSFIELD
                                        OPINION BY
v.   Record No. 1154-96-4    CHIEF JUDGE NORMAN K. MOON
                                      FEBRUARY 4, 1997
ROBERT L. TAYLOR, III


              FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                    William Shore Robertson, Judge

          Jeanette A. Irby (Walker, Jones, Lawrence,
          Duggan & Savage, P.C., on briefs), for
          appellant.

          Robin C. Gulick (Robin C. Gulick, P.C., on
          brief), for appellee.


     Jill Mansfield appeals from the decree of the trial court

ordering payment of child support by Robert L. Taylor in the sum

of $250 per month.  Appellant raises four questions: (1) whether

the court erred in not imputing income to appellee because he

voluntarily left his employment; (2) whether the court erred in

determining that appellee had made a full and clear disclosure

about his ability to pay child support; (3) whether the court

erred when it determined that when appellee voluntarily left his

employment that the voluntary leaving required a "wrongful act"

in order for the court to impute income; and (4) whether the

court erred when it found that appellee's employment with his own

sole proprietorship was a bona fide and reasonable business

undertaking, thereby finding that appellee was not voluntarily

underemployed.  We find that the trial court erred in not finding

that appellee's change of employment constituted either purposeful evasion of his support obligations or such careless disregard for that obligation as to require imputation of income.

The parties were divorced by decree on or about December 15, 1982. Subsequent amendments were made to the divorce decree, including a November 3, 1988 amendment requiring appellee to maintain the parties' children on his current medical and hospitalization insurance policy and to share equally with appellant all uninsured medical expenses of the children. The decree was again amended on March 30, 1990, ordering appellee to pay $500 per month in child support commencing February 29, through January 1994.

In August 1995, appellant filed a petition for support, seeking an increase in child support.

Appellee filed an answer to the petition for support and a cross-petition to reduce child support. Appellee's cross-petition requested that his child support obligation be reduced to a level consistent with Code § 20-108.2 and that his child support obligation cease upon his children reaching the age of eighteen, regardless of whether they had completed high school. After a hearing, the trial court entered its final decree in this matter on April 16, 1996. The trial court concluded: (1) that appellee was not voluntarily underemployed; (2) that appellant's gross monthly income was $5,172 and appellee's gross monthly income was $800; and (3) that under the guidelines, appellee's presumptive child support obligation was

$112 but for delineated reasons appellee's monthly child support obligation should be $250. The trial court also denied an award of attorney's fees to either party.

The following evidence was presented regarding the state of appellee's finances. Appellee was employed for thirteen years by Atlantic Research Corporation, a defense contracting firm, before being laid off as a result of a reduction in force in 1992. In August 1992, appellee obtained temporary employment with AdTech, a defense inspection firm. Shortly thereafter, appellee was retained by AdTech as a permanent, full time employee. In July 1993, appellee and his present wife began the process of forming a sole proprietorship business, "PostNet." All necessary documentation was completed by October 1993. Appellee obtained a loan through the Small Business Administration with a mortgage on his jointly owned marital property and invested all of his retirement, some $25,000, in PostNet. Subsequently, appellee submitted his letter of resignation to AdTech on or about January 31, 1994.

Appellee testified that his efforts to start his own business were at least in part motivated by the fact that appellee's supervisor, Mr. Koch, had informed appellee during the summer of 1993 that he might need to look for a new job as the downturn in the defense industry and the completion of the current contracts held by AdTech might require layoffs, which could include appellee. Mr. Koch testified that he would have told appellee about the possibility of layoff no more than a

month prior to Mr. Koch's receipt of appellee's resignation in January 1994.  However, Mr. Koch also testified that had appellee not resigned, he would have been laid off within a three to eight week period from the date on which appellee chose to resign.

Appellee testified that he did not seek any other position and dedicated his efforts to starting PostNet.  He also stated that he did some consulting work after his resignation and earned $35 an hour for this work.  Appellee did not disclose, but Mr. Koch testified, that appellee continued to perform some inspection work for AdTech after his resignation, for which he was paid $35 an hour.

Because of poor record keeping, incomplete documentation and a general lack of information, one cannot estimate with any degree of accuracy appellee's income from his sole proprietorship, PostNet.  Appellee testified that he did not know his projected income from the business and that he had no budget, plan or goal with respect to PostNet.  Appellee stipulated to income of $9,600 a year from PostNet.  This amount coincides with the terms of appellee's Small Business Administration loan, wherein appellee contractually limited his income from PostNet to no more than $9,600 a year for the seven year life of the loan.[1]  Appellee repeatedly admitted that he was not a good bookkeeper and that he had not been very careful in record keeping.

_____

[1] At the time of the child support hearing, appellee had been making payments on the Small Business Administration loan for two years.

Evidence indicated that numerous transactions, including deposits and transfers, were not accounted for in the PostNet ledgers, or conversely, were entered into PostNet's ledgers but were not reflected in the bank's account records. In addition, outside consulting fees were included in the PostNet ledgers and personal expenses were paid from business funds.

In Antonelli v. Antonelli, the Supreme Court addressed the proper standard to be employed where a party's income has diminished due to a voluntary change of employment. 242 Va. 152, 409 S.E.2d 117 (1991). In Antonelli, the father petitioned for a decrease in child support after voluntarily leaving a salaried management position with a Richmond stockbrokerage firm for a commissioned sales position with another Richmond stockbroker where the father projected he would earn about the same income as with his former employer. However, after the stock market decline in 1987, his annual income was diminished by approximately $10,000. The trial court found a material change in circumstances. However the trial court also held, relying on Edwards v. Lowry, 232 Va. 110, 348 S.E.2d 259 (1986), that the father must also prove "that the lack of ability to pay is not due to any voluntary act or neglect." 242 Va. at 154, 409 S.E.2d at 118. The trial court concluded that the father "accepted the risk involved in being a commissioned stockbroker" and that the father had failed to meet the requirements of Edwards and therefore would not be granted a reduction in support. Id.

We had reversed, holding that the trial court "imposed an

erroneous standard of proof" on the father.  Antonelli v.

Antonelli, 11 Va. App. 89, 90, 396 S.E.2d 698, 699 (1990).

Interpreting the Edwards standard that a party seeking reduction

show his or her inability to pay is not due to his or her own

"voluntary act or because of neglect," we held that while any

career change is a "voluntary act," the law defining child

support was not "intended to frustrate ambition or enterprise."

Id.  Accordingly, we construed the term "voluntary act" to mean a

"willful act done for the purpose of frustrating the feasibility

or enforceability of the support obligation."  Id.

The Supreme Court, while endorsing our articulation of the

Edwards standard, Antonelli, 242 Va. at 155, 409 S.E.2d at 119,

reversed.  The Supreme Court disagreed with our application of

the Edwards standard, id., and affirmed the trial court's finding

that "the father gambled with the children's ability to receive

his financial support, and lost."  Id. at 156, 409 S.E.2d at 119.

 The Court further concluded that "[o]f course, a father is not

prohibited from voluntarily changing employment.  But, . . . when

the father who was under court order to pay a certain sum for

child support, which he was able to pay given his employment,

chose to pursue other employment, albeit a bona fide and

reasonable business undertaking, the risk of his success at his

new job was upon the father, and not upon the children."  Id. at

156, 409 S.E.2d at 119-20.

The Supreme Court's analysis in Antonelli makes clear that

actions which are either purposefully taken with the desire to

- 6 -

evade one's support obligations <u>or</u> which evidence a careless disregard for one's support obligations, can constitute "wrong doing" sufficient to warrant imputation of income.

Further, the burden of proof rests with the party attempting to have their support obligation decreased. <u>See</u> <u>id.</u> at 154-55, 409 S.E.2d at 119; <u>Hammers v. Hammers</u>, 216 Va. 30, 31, 216 S.E.2d 20, 21 (1975). Prior to <u>Antonelli</u>, the Supreme Court concluded that

> [w]here, as here, the father seeks a reduction in the amount of payments for the support and maintenance of his minor children because of a change in his financial condition, he must make a full and clear disclosure relating to this ability to pay. He must also show that his lack of ability to pay is not due to his own voluntary act or because of his neglect.

<u>Id.</u> (citations omitted).

Applying the <u>Antonelli</u> standard to the facts of this case, it is evident that the trial court erred in its application of <u>Antonelli</u>. Appellee bore the burden of proving that his career change was made in good faith and without disregard for his support obligation. The trial court properly considered appellee's motive in changing positions, i.e., whether appellee opted to change his employment because of a good faith desire to do so or instead with the intent to frustrate his ability to pay support. The trial court concluded the decision to change employment was not motivated by a desire to escape support payments and consequently found no violation of <u>Antonelli</u>. However, <u>Antonelli</u> requires not only that the trial court

- 7 -

consider appellee's motive in changing positions but also whether the change in position evinced a careless disregard for the existing support obligation.

Appellee decided to pursue a new career from which he could receive, according to the terms of his SBA loan, no more than $9,600 in income per year for a seven year period. Here, like the parent in <u>Antonelli</u>, appellee was aware of his support obligations when he undertook the new career change. However, unlike the situation in <u>Antonelli</u>, where the father obtained a job he believed would compensate him equivalent to his prior position, appellee obtained new employment that he knew would not provide income remotely near the level of his prior position. Appellee testified that he was devoting sixty hours each week to his new business. Yet he had continued to earn less than he would had he worked in a minimum wage position. He planned for this job to pay off in the future. His obligations to his children are now. Appellee's actions in this regard appear considerably more "careless" than those of the father in <u>Antonelli</u> because, not only did appellee fail to seek a comparable income to that of his prior job, he ensured that he would have a very low income in his new position, as he himself negotiated the terms limiting his income.

While appellee may have acted in good faith in deciding that a change in position would be advantageous, his new career choice, while a bona fide business opportunity for him, nevertheless evidences either a purposeful desire to avoid his

support obligation, or some part thereof, or a careless disregard for that obligation.  Consequently, we find that the trial court erred in not imputing income to appellee and accordingly, we reverse and remand for entry of an order consistent with this opinion.

Reversed and remanded.