**Thomas C. BEARD, Appellant,**

v.

**Donna C. MORRIS, Appellee.**

No. S–7228.

Supreme Court of Alaska.

March 20, 1998.

Charles A. Winegarden, Law Office of Charles A. Winegarden, Kodiak, for Appellant.

Joel H. Bolger, Jamin, Ebell, Bolger & Gentry, Kodiak, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Thomas Beard appeals from the superior court's decision that he did not demonstrate a material change of circumstances for purposes of reducing his child support obligation. Thomas alleges that his income fell significantly because he lost valuable housing allowances when he began living free of charge in the barracks on the United States Coast Guard base where he is employed. We remand for further findings.

## II. FACTS AND PROCEEDINGS

Thomas and Donna Beard were married in April 1983 and divorced in April 1994. During the marriage, they had three children. Initially, the Decree of Dissolution of Marriage awarded custody of the children to Thomas. In September 1994 the superior court approved an agreement between the parties that awarded custody of the children to Donna and required Thomas to pay $879 per month in child support.

Thomas's monthly child support obligation was calculated using the formula in Alaska Rule of Civil Procedure 90.3(a), which fixed his obligation at thirty-three percent of his adjusted income. To calculate his adjusted income, Thomas submitted a Child Support Guidelines Affidavit in which he estimated his total monthly income to be $2,992.23. This sum included $1,571.40 in base pay, which Thomas received as a quartermaster with rank E–5 in the United States Coast Guard. It also included $80 attributable to his permanent fund dividend and $1,340.83 in "other" income. Thomas's "other" income consisted of five allowances that he received from the Coast Guard: (1) a Basic Allowance for Quarters, (2) a cost of living allowance, (3) a clothing allowance, (4) a food allowance

called Basic Allowance for Subsistence, and (5) a Variable Housing Allowance. He received the Variable Housing Allowance, as well as portions of both the Basic Allowance for Quarters and the cost of living allowance, because he did not live on the Coast Guard base.

Subsequently, Thomas moved into the Coast Guard barracks. As a result, he lost his Variable Housing Allowance and received smaller amounts for his Basic Allowance for Quarters and cost of living allowance. These losses and reductions amounted to $800–900.[1] However, the move allowed Thomas to live on the Coast Guard base for free, saving him approximately $675–700 per month in rent.

In February 1995 Thomas filed a motion in the trial court to reduce his child support obligation. In his memorandum supporting that motion, Thomas stated that he "could not afford to live off base and moved into the barracks." He also attached a Child Support Guidelines Affidavit similar to the one he had filed when the court initially fixed his child support obligation. In the new affidavit, Thomas proposed that his new child support obligation should be $615.49 per month. The new affidavit resembled the earlier one as it calculated Thomas's income by including his base pay, permanent fund dividend, and clothing allowance. Unlike the earlier affidavit, the new one reflected Thomas's new, lower cost of living allowance and did not include the Variable Housing Allowance to which Thomas was no longer entitled. In addition, the new affidavit did not include a specific line item for either the Basic Allowance for Quarters or the food allowance. Instead, Thomas characterized the sum of those two allowances, $352.04, as the "value of employer-provided housing/food."

In Donna's opposition to Thomas's motion, she asserted that Thomas was not entitled to a reduction in his child support obligation because, she alleged, he voluntarily reduced his income by moving into the barracks. She also argued that Thomas incorrectly calculated the value of his employer-provided housing, and she posited that the value of

Thomas's housing should be equal to the allowances he relinquished when he moved to the barracks.

In response to Donna's opposition, Thomas revised his Child Support Guidelines Affidavit. His revised affidavit reflected (1) his base pay ($1,612.20), (2) his permanent fund dividend ($81.99), (3) his food, clothing, and cost of living allowances plus his Basic Allowance for Quarters ($499.38), and (4) an estimate of the value of his employer-provided housing ($290.10). Thomas estimated the value of his housing to be equal to the Basic Allowance for Quarters without Dependents associated with his pay grade, which was $290.10. Based upon this estimate, Thomas concluded that his child support obligation should be $713.55.

Superior Court Judge Donald D. Hopwood declined to modify Thomas's child support payments. In his order, Judge Hopwood stated that Thomas "has not experienced a material change of circumstances based upon his reduced income." He also concluded that Thomas "is receiving in-kind housing with a value of approximately $700 per month and in July will receive most of his meals plus additional sea pay. His income and ability to pay the ordered support has not decreased by 15% and might have increased." Thomas appeals Judge Hopwood's ruling.

## III. *DISCUSSION*

■ Thomas argues that the trial court did not provide a sufficiently clear basis for its decision when it refused to modify his child support obligation. He asserts that the superior court "did not provide any calculations or other basis for its determination." We agree.

Alaska Rule of Civil Procedure 52(a) requires the trial court to "find the facts specially and state separately its conclusions of law." Alaska R. Civ. P. 52(a). We recently concluded that "[i]n the context of a Civil Rule 90.3 child support modification motion," the trial court must provide " '[a]dequate findings of fact . . . so that a reviewing court

---

**1.** The allowances vary from month to month because some of them are calculated according to the number of days in the month. Also,

Thomas moved at the end of 1994, just before some of the allowances were raised slightly.

may clearly understand the grounds on which the lower court reached its decision.'" *Bird v. Starkey*, 914 P.2d 1246, 1249 (Alaska 1996) (quoting *Waggoner v. Foster*, 904 P.2d 1234, 1235 (Alaska 1995)). "The findings need not be extensive, but must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved." *Id.* at 1249 n. 4.

In this case, the superior court indicated that Thomas was not entitled to a modification because Thomas's employer-provided housing was worth "approximately $700 per month." However, the court neither described the method it used to value Thomas's housing nor provided an explanation that would permit us to glean from the record the basis for its calculation. Therefore, we conclude that the superior court did not provide adequate findings to support its decision to deny Thomas's motion to modify.

Despite this lack of findings, Donna urges us to affirm the superior court's decision, asserting that "[t]here is substantial evidence that Mr. Beard's decision to move to the barracks was voluntary." She maintains that Thomas's "claim that he was forced to move to the barracks because of financial circumstances does not bear scrutiny" because he gave up "over $850 per month in benefits to avoid $775 in monthly expenses."

We have noted that a trial court should consider whether a noncustodial parent voluntarily reduced his or her income when the trial court decides whether a modification of that parent's child support obligation is appropriate. *See Vokacek v. Vokacek*, 933 P.2d 544, 549 (Alaska 1997). "[T]he judge [is] to consider the nature of the changes and the reasons for the changes, and then to determine whether, under all the circumstances, a modification is warranted." *Id.* (quoting *Pattee v. Pattee*, 744 P.2d 658, 662 (Alaska 1987), *overruled in part on other grounds by Nass v. Seaton*, 904 P.2d 412, 416 n. 7 (Alaska 1995)). "[A] noncustodial parent who voluntarily reduces his or her income should not automatically receive a corresponding reduction in his or her child support obligation." *Nass*, 904 P.2d at 418.

In this case, Donna opposed Thomas's motion to modify by arguing at length that Thomas voluntarily reduced his "pay." Specifically, she asserted: "Mr. Beard has given up over $900 per month in benefits in order to avoid $775 ... in monthly expenses. His move to the barracks was not involuntary." [2]

■ Despite Donna's arguments, the superior court apparently did not consider whether Thomas's move into the barracks was voluntary. Thomas asserted to the trial court that he moved because he "could not afford to live off base." On remand, the superior court should examine whether Thomas had a valid economic reason for moving and, thus, reducing the allowances that he receives from his employer. A modification would not be appropriate if Thomas decided to forego these allowances simply to reduce his child support obligation. [3] If nec-

---

**2.** Donna contends that prior to moving, Thomas received up to $900 in monthly allowances and each month paid $675 to live in an off-base apartment and $100 in gas in order to commute to the base. Thus, he had a place to live, access to the base and $125 left in his pocket at the end of the month. By moving to the barracks, Thomas gave up the $900 monthly allowance but was relieved of the responsibility of paying for rent or gas to commute to the base. As a result, he still has a place to live and access to the base; yet, he no longer has the $125 remainder available as discretionary income. This is the basis of Donna's contention that Thomas's "claim that he was forced to move to the barracks because of financial circumstances does not bear scrutiny."

**3.** "A showing of bad faith is not a prerequisite to a finding that unemployment is voluntary."

*Kowalski v. Kowalski*, 806 P.2d 1368, 1371 (Alaska 1991). "We will not relieve a noncustodial parent from his child support obligations absent an affirmative showing that the obligor parent cannot meet this obligation." *Id.* (citing *Houger v. Houger*, 449 P.2d 766 (Alaska 1969)). However, as other courts have held, modification of a child support obligation is certainly not available to an obligor who reduces income in an effort to decrease child support, since such conduct amounts to bad faith. *See Thomas v. Thomas*, 589 So.2d 944, 948 (Fla.Dist.App.1991) (remanding to trial court to determine whether spouse reduced income to avoid compliance with a support obligation or was acting in good faith); *accord In re Marriage of Barnard*, 283 Ill.App.3d 366, 218 Ill.Dec. 583, 586, 669 N.E.2d 726, 729 (1996) ("In determining whether an individual acts in good faith ... the trial court looks at

essary, the superior court may also examine and make additional findings on remand relating to the value of Thomas's employer-provided housing.[4]

## IV.  CONCLUSION

For the foregoing reasons, we REMAND this case for further proceedings consistent with this opinion.

MATTHEWS, Justice, dissenting.

Today's opinion remands this case to determine whether Thomas had a "valid economic reason" for moving to the barracks. Op. at 420.  The opinion also states that Thomas would not be entitled to a modification in child support payments if he gave up the off-base housing allowances "simply to reduce his child support obligation." *Id.* This suggests that child support savings cannot be considered in determining the validity of Thomas's reasons for moving.

Given that economic validity is the test, I see no justification for ignoring the surcharge which Civil Rule 90.3 imposes on Thomas's income and benefits.  In his case the surcharge is thirty-three percent of his adjusted income.  Rational people commonly

structure their financial affairs in ways which legally minimize their taxes, and the Civil Rule 90.3 surcharge is, from the standpoint of an obligor, indistinguishable from a tax. When an obligor is offered a choice of levels of in-kind benefits by his employer, I think an obligor should be able to choose a low level based on his belief that a higher level would be more than he needs and too expensive when the 90.3 surcharge is taken into account.

One consequence of the majority's exclusion of child support savings in determining whether an obligor's choice is economically valid is that an obligor who is offered various levels of employer-supplied housing may have to accept the most valuable level available.[1]  As today's opinion points out, there is case law for the proposition that an obligor may not refuse the highest level of monetary income which he could reasonably earn. Does this mean that the obligor must also accept the highest level of in-kind benefits which he is offered?  I think that the answer should be "no."  Additional money can always be spent for child support, but the added value represented by more expensive in-kind benefits cannot.

whether the change was driven by a desire to evade financial responsibility for supporting the children."); *Woodall v. Woodall*, 837 S.W.2d 856, 858 (Tex.App.1992) (evaluating whether "income reduction was designed to obtain a decrease in [ ] child support obligation"); *cf.* Donald T. Kramer, 1 *Legal Rights of Children* § 4.07, at 188 (2d ed.1994).  Where one acts "purposefully ... with the desire to evade one's support obligations" or evidences "a careless disregard for one's support obligations," a modification is inappropriate.  *Mansfield v. Taylor*, 24 Va.App. 108, 480 S.E.2d 752, 755 (1997); *accord State, Dep't Soc. Servs. v. Seals*, 701 So.2d 746, 748 (La.App.1997) (holding that a person who voluntarily reduces income "solely for the purpose of avoiding his/her alimentary obligations" is not entitled to reduction in his/her support obligation) (citation omitted).

4. The dissent predicts that the reasoning of today's opinion will result in a rule that an obligor must always accept the highest level of in-kind benefits that is offered by an employer.  The dissent expresses the concern that while "[a]dditional money can always be spent for child support, ... the added value represented by more expensive in-kind benefits cannot."  Diss. at 421. Thus, according to the dissent, "[i]t is this difference between monetary and in-kind compensa-

tion" which leads to the conclusion "that an employee should not be penalized for declining to accept the highest level of employer-offered in-kind compensation."  Diss. at 421.  However, that is not the issue presented by this appeal. Thomas was not offered a choice between two levels of in-kind benefits; he chose an in-kind benefit over cash.  Thomas was paid additional monetary compensation of approximately $900 each month.  The purpose of this compensation was to cover his housing expenses.  He was apparently able to do so for $675 a month, which left him money for gas and discretionary expenditures.  Thomas's situation is thus quite similar to that of any obligor who earns monetary compensation from which housing and transportation expenses must be paid.  Civil Rule 90.3 does not permit deductions of such expenses in determining the obligor parent's adjusted annual income for purposes of calculating child support.

1. Thomas, in substance, is offered a choice of levels of housing for which his employer will pay. He may accept a room in the barracks or he may accept a housing allowance of approximately $900 which is designed to defray the costs of off-base housing.  This choice differentiates Thomas's case from that of a typical employee who receives no housing benefits.

For example, if an obligor refuses a monetary raise of $1000 per month, it may be right to impute to him the amount which he has foregone as income for Civil Rule 90.3 purposes. Assuming that his 90.3 surcharge is thirty-three percent, accepting the raise would cost him $330, but he could readily afford this because his income would be increased by $1000. Contrast this with the case of an obligor who is offered a $1500 apartment as in-kind compensation, but instead selects a more modest one having a value of $500. Taxing him on the $1000 difference in value which he has foregone is a much more questionable proposition. Accepting the more valuable apartment would not supply the means of paying the child support surcharge. The employee may rationally decline the more expensive apartment because it would cost him $330 in 90.3 payments without, unlike a monetary raise, carrying with it the means for making the additional payments. It is this difference between monetary and in-kind compensation which leads me to conclude that an employee should not be penalized for declining to accept the highest level of employer-offered in-kind compensation.

The rationale for including in-kind compensation within the concept of income for Civil Rule 90.3 purposes is that the value of in-kind compensation reduces the obligor's living expenses thus freeing funds which can be used to pay child support. The commentary to Civil Rule 90.3 states that income includes "perquisites or in-kind compensation to the extent that they are significant and reduce living expenses...." Commentary 90.3 III. A.19. The concept of reduction of living expenses implies a normal range for such expenses. If, to revert to the example used in the preceding paragraph, an obligor would normally spend $500 on housing and is offered and accepts a $1500 apartment from his employer, his reduction in expenses would be $500 rather than $1500.

Arguably this suggests that when an obligor declines an in-kind benefit at a higher level in favor of a lower level, imputation of income would be appropriate to the extent of the savings to the obligor measured by what the obligor would normally be expected to spend for the benefit given his socio-economic status. Arguably too, when an employee accepts high-level in-kind benefits, he should be able to argue that the imputation of income should reflect not the value of the benefits but the living expenses which he would normally incur left to his own devices. These suggestions, however, seem too imprecise, difficult to administer, and too intrusive into personal lifestyle choices to be generally adopted. Instead, the rule which I favor is simply that an obligor should be charged with the value of the in-kind benefits which he accepts.

In my view this rule should be applied to this case. Thus on remand the court should be directed to make findings based on the evidence as to the value of Thomas's employer-provided housing. That value should be imputed to Thomas's income, and child support payments should be calculated considering it along with Thomas's other income. If the payments as so calculated are more than fifteen percent less than the payments under the current support order, the current payments should be modified.