# CIRCUIT COURT OF WARREN COUNTY

James R. Anderson

v.

Winchester Surgical
Clinic et al.

December 4, 2001

Case No. (Law) 00-216

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on November 19, 2001, on the Defendants' motions for sanctions. David H. N. Bean, Esquire, appeared for the Plaintiff; William D. Cremins, Esquire, appeared for defendants Warren Memorial Hospital and Marrow and Moat; and Mark A. Brown, Esquire, appeared for defendants Daugherty and the Winchester Surgical Clinic.

## I. *Statement of Material Facts*

The Court finds as follows.

This is a medical malpractice action filed against an orthopedic surgeon, Dr. Daugherty; his practice, Winchester Surgical Clinic; and against a physical therapist, Moat; his supervisor, Marrow; and their employer, Warren Memorial Hospital. In July 2001, this action was set for trial for four days,

beginning January 29, 2002. The pretrial order set an August 29, 2001, deadline for the Plaintiff's filing of his expert witness designations.

On August 29, 2001, the Plaintiff filed a detailed, seven page expert witness designation conforming to Supreme Court Rule 4:1(b)(4)(A) in which he named three physicians and expounded at length on the substance of the opinions which they were expected to render. The designation stated that three of the physicians purportedly were going to testify that the defendant physician Daugherty had violated the standard of care, and one of the witnesses, Dr. Urquia, was also purportedly going to testify that the physical therapist Moat and his supervisor Marrow had violated the standard of care.

In October 2001, the Defendants took the depositions of the three physicians who had been designated by the Plaintiff as his expert witnesses, and all three of these physicians testified that they had not consented to be expert witnesses in this case and that they did not hold the opinions which plaintiff's counsel had set forth in considerable detail in his expert witness designations.

Plaintiff's designated expert Dr. Neviaser testified at his October 18, 2001, deposition that as of August 29, 2001, that he had had no contact with plaintiff's counsel (Dep. p. 14), that he had not been sent any records to review in this case as of August 29, 2001 (Dep. p. 16), that he first talked to plaintiff's counsel about the contents of the expert designation about a week or ten days before his October 18, 2001, deposition (Dep. p. 19), and that he did *not* hold the opinion that Dr. Daugherty violated the standard of care with respect to the surgeries. (Dep. p. 63; see also Dep. pp. 8, 10, 19-21.)

Plaintiff's designated expert Dr. Urquia testified at his October 9, 2001, deposition that he had not reviewed the records in this case, that he had not discussed any of his opinions with Plaintiff's counsel, and that he had not agreed to act as an expert witness in the case (Dep. pp. 8-9), and that he did not have the opinion that either Dr. Daugherty (Dep. pp. 15-17) or Moat (Dep. p. 18) violated the standard of care.

Plaintiff's designated expert Dr. Wynn testified at her October 4, 2001, deposition that, the night before the deposition, Plaintiff's counsel had delivered a stack of medical records to her (Dep. pp. 15-16), that she had never consented to be an expert witness for the plaintiff (Dep. p. 19), and that she did not inform the plaintiff that Dr. Daugherty's treatment violated the standard of care. (Dep. p. 18.) Rebuffed by this witness at her deposition, Plaintiff's counsel stated "I realize that you were not apprised of the fact that you were designated as an expert. ... Sometimes that is done with or without permission. Usually you like to get permission." (Dep. p. 22.)

While Dr. Wynn was a treating physician and could have been designated as an expert to testify about her diagnosis and treatment of the plaintiff

without formally obtaining her permission, because as a treating physician she is a participant in the events about which she is asked to testify, no physician who is designated as a standard of care expert can ever properly be designated as an expert unless that physician has consented to review the case, has reviewed the case, has formed opinions, and then consented to testify about those opinions. This fundamental concept was blatantly violated in this case, not once but three times.

At the November 19, 2001, hearing, the Plaintiff nonsuited his actions against the Defendants in these cases.

At the November 19, 2001, hearing, the Court ordered Plaintiff's counsel to file a highlighted copy of his phone bill reflecting any conversations with Dr. Urquia before August 29, 2001, and to provide copies of any notes made of those conversations, and the Court deferred ruling on the motion for sanctions pending the filing of the bill and notes. On December 3, 2001, Plaintiff's Counsel filed his highlighted phone bills, and these bills showed the following calls to Dr. Urquia's office before August 29, 2001:

| Date | Call Duration |
|------|---------------|
| August 22, 2001 | 6.7 minutes |
| August 23, 2001 | 1.9, .3, .5., and 1.7 minutes |
| August 24, 2001 | 3.7 minutes |

Mr. Bean's notes of these conversation are terse: his August 23, 2001, note states: "record review — 'agreed';" his August 24, 2001, note states: "some records mailed." There is no note of any opinions which Dr. Urquia expressed to Mr. Bean. The description in the Plaintiff's expert witness designation of the substance of Dr. Urquia's designation is artfully drawn and is two pages long, but these opinions did not emanate from Dr. Urquia.

## II. *Conclusions of Law*

The Court concludes as follows.

Virginia Code § 8.01-271.1 provides that the signature of an attorney on a pleading constitutes a certificate by him that he has read the pleading and that "to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact. ...." When asked to assess sanctions, the Court applies "an objective standard of reasonableness." *Nedrich v. Jones*, 245 Va. 465, 471, 429 S.E.2d 209 (1993).

In *Flora v. Shulmister*, 262 Va. 215, 546 S.E.2d 427 (2001), the Supreme Court reversed the trial court's award of sanctions based on plaintiff's counsel's failing to produce an autopsy report, and, in doing so, it stated:

> In reviewing a trial court's imposition of a sanction, "we apply an abuse-of-discretion standard." *Oxenham v. Johnson*, 241 Va. 281, 287, 402 S.E.2d 1, 4 (1991). We judge Flora's conduct by an objective standard of reasonableness in order to determine whether, after reasonable inquiry, he could have formed a reasonable belief that the response to the request for production of documents, which omitted the autopsy report, was well grounded in fact, and warranted under existing law or by a good faith argument for the extension, modification, or reversal of existing law. Code § 8.01-271.1; *Nedrich v. Jones*, 245 Va. 465, 471-72, 429 S.E.2d 201, 204 (1993); *Tullidge v. Board of Supervisors*, 239 Va. 611, 614, 391 S.E.2d 288, 289-90 (1990). This standard does not require that we decide that Flora's response was actually warranted by existing law. *Gilmore v. Finn*, 259 Va. 448, 467, 527 S.E.2d 426, 436 (2000). " 'The wisdom of hindsight should be avoided' in applying the appropriate objectively reasonable standard of review." *Id.* (quoting *Tullidge*, 239 Va. at 614, 391 S.E.2d at 290).

In this case, the Plaintiff had no contact with the three physicians whom he designated as standard of care experts about the substance of the opinions which they were purportedly to render, as plaintiff's counsel had represented in his expert witness designation. This case presents so blatant a violation of reasonable conduct and is so manifestly deserving of sanctions that the less said the better. However, a fundamental tenet of our justice system, which is embodied in Virginia Code § 8.01-271.1, is that there must be some objective basis to file any legal pleading; otherwise, a citizen may be reduced to financial ruin by having to defend against frivolous and perhaps even scurrilous suits and statements filed in a legal action. In this case, there was *absolutely no basis in fact or law* for plaintiff's counsel to file the August 29, 2001, expert witness designations of the three physicians.

"[E]xpert testimony is ordinarily required in malpractice cases 'on (1) the standard of care, (2) deviation from the standard of care, and (3) causation. ...' " *Raines v. Lutz*, 231 Va. 110, 115, 341 S.E.2d 194 (1986). A court may grant summary judgment on relevant claims because a party fails to identify expert witnesses as required by the pretrial order. *Woodbury v. Courtney*, 239 Va. 651, 654, 391 S.E.2d 293 (1990) (failure to identify expert witness five months prior to trial in medical malpractice case). Since there

were no experts in this case, there is a real question as to whether this case should have ever been filed in the first instance.

The factors generally to be considered in setting attorney's fees were articulated in detail in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), *cert. denied* 439 U.S. 934. Two items of material consideration are the difficulty of the questions raised and the customary fee for like work. "[A] fact finder is required to determine from the evidence what are reasonable fees under the facts and circumstances of the particular case." *See Beale v. King*, 204 Va. 443, 446, 132 S.E.2d 476, 478 (1963). In determining a reasonable fee, the fact finder should consider such circumstances as the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances." *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449, 403 S.E.2d 334 (1991) (action on note). "An award of attorney's fees is tied to the decision on the merits of the case." *Antonelli v. Antonelli*, 11 Va. App. 89, 95, 396 S.E.2d 698 (1990). The facts of this case present the Court with a conundrum *vis a vis* awarding attorney's fees. On one hand, how much is reasonable to defend against a paper tiger? On the other hand, as the word "sanction" implies, in some instances there is a punitive element to an award of sanctions, and, in this case, the detail of the expert witness designations gave them ostensible credibility. Who could reasonably believe that such detailed statements were pure fantasy?

Counsel for Daugherty has submitted a request for an award of attorney's fees and costs of $20,735 with an itemized copy of their bills, and counsel for Warren Memorial, Moat, and Morrow has submitted a request of $39,770, but they did not submit an itemized copy of their bills. The Plaintiff's filing of his expert witness designation was the crossing of the Rubicon in this case. Since August 29, 2001, counsel for Daugherty has accrued fees of $9,664.50 and costs of $1,527.83, all of which could have been obviated had the plaintiff nonsuited his action in August 2001, when he should have recognized that he was not prepared to file his expert witness designations. While there are differences in the respective defenses, counsel for Daugherty's fees are substantially lower than those of counsel for the other defendants, who did not submit an itemized bill, so the court is using the fees and expenses of Daugherty's counsel as an index of reasonability in this case as to the fees and expenses incurred after August 29, 2001.

## III. *Decision*

Therefore, it is adjudged and ordered that:

1. Defendants' Motions for Sanctions are granted.

2. Thomas W. Daugherty and Winchester Surgical, Ltd., shall have judgment against David H. N. Bean in the amount of $11,192.00 with interest thereon until paid for attorney's fees and costs.

3. Warren Memorial Hospital, Daren P. Moat, and Ward Marrow shall have judgment against David H. N. Bean in the amount of $11,192.00 with interest thereon until paid for attorney's fees and costs.

4. In the event that the nonsuited actions are refiled, neither David H. N. Bean nor any member of his firm may represent the plaintiff.

5. In all future medical malpractice actions in which Mr. Bean may be employed, all expert witness designations and answers to interrogatories setting forth his expert witness's opinions must be endorsed by the expert purporting to hold the opinions expressed.