COURT OF APPEALS OF VIRGINIA


Present:   Judges Powell, Alston and Senior Judge Annunziata
Argued by teleconference


GEEVE ASSARI

MEMORANDUM OPINION* BY
v.       Record No. 0939-10-4          JUDGE CLEO E. POWELL
FEBRUARY 8, 2011

SUZANNE R. ASSARI


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Marcus D. Williams, Judge

Fred M. Rejali (Amir Raminpour; Jane Lee, on brief), for
appellant.

Camille N. Allan (Surovell Markle Isaacs & Levy PLC, on brief),
for appellee.


Geeve Assari ("husband") appeals the decision of the Circuit Court of Fairfax County

reducing his spousal support obligation to Suzanne R. Assari ("wife") to $2,000 per month and

his child support obligation to $916 per month.  Husband contends that the amount of income

imputed by the trial court was not supported by the evidence; therefore, the trial court's decision

was in error.  We disagree and affirm the decision of the trial court.

BACKGROUND

Husband and wife were divorced on May 15, 2009.  As part of the divorce, husband was

ordered to pay child support ($1,390 per month) and spousal support ($3,500 per month) based

on husband's imputed income of $16,500 per month and wife's actual income of $4,000 per

month.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On October 5, 2009, husband filed a motion to reduce spousal support and child support, alleging a material change in circumstances. On January 6, 2010, the trial court heard testimony and received evidence from the parties regarding their respective incomes and expenses.

The evidence revealed that, at the time of the divorce, husband owned an interest in two businesses, GKA Tysons, LLC d/b/a MNG by Mango ("Mango") and Wrangler Construction ("Wrangler"). Husband testified that, since the divorce, he was forced to relinquish all ownership in Mango. However, he admitted on cross-examination that the financial problems with Mango "really began in 2008" and that Mango had not been producing any income prior to the entry of the final decree of divorce on May 15, 2009.

Husband also testified that, since the divorce, Wrangler was unable to pay its business debts due to the economic downturn. As a result, Wrangler was unable to pay its annual registration fee and it was subsequently dissolved by the State Corporation Commission. As a result, Wrangler could no longer conduct business in the Commonwealth of Virginia.

Based on the loss of Mango and the dissolution of Wrangler, husband testified that he had no current income. Although husband testified that he had no discernible income, there was evidence that husband made several large cash deposits into and withdrawals from a business account unrelated to either Wrangler or Mango.[1] When questioned about these deposits and withdrawals, husband was unable to definitively explain where the money came from or where the vast majority of it went. He acknowledged that at least one of the deposits was payment for work done by Wrangler in Maryland.

Husband further admitted that, since the divorce, he had applied for only four jobs.

After hearing all of the evidence, the trial court found that the income originally imputed to husband was not based on income derived from Mango. As a result, the trial court found

---

[1] The account was listed as "Geeve Assari d/b/a Geeve Assari."

husband's loss of Mango was not a material change in circumstances. Regarding Wrangler, however, the trial court found that the income originally imputed to husband was based, in part, on the income derived from Wrangler. Furthermore, because Wrangler was, in effect, defunct and the market for construction services had decreased substantially, the trial court determined that husband had proven a partial material change in circumstances.

The trial court also found, however, that husband had not shown "sufficient efforts to find work." Similarly, the trial court noted the unexplained deposits and withdrawals from husband's bank accounts and determined that husband had "more income than he [was] representing to the Court." Based on these findings, the trial court reduced husband's imputed income to $9,000 per month. As a result, the trial court reduced husband's spousal support obligation to $2,000 per month and his child support obligation to $916 per month.

Husband appeals.

ANALYSIS

Husband argues that the trial court's decision to impute income in the amount of $9,000 per month is not supported by the evidence. According to husband, no evidence was presented regarding his overall earning capacity other than the income from Mango and Wrangler. Therefore, having found that Mango was not factored into the initially imputed income and that Wrangler's dissolution was a material change in circumstances, there was no basis for the trial court to impute any income to him. On brief, he further contends that, in order to impute income to him, the burden was on wife to produce evidence or expert testimony as to the state of the construction business, as well as husband's employability and earning capacity. We disagree.

"Once a child support award has been entered, only a showing of a material change in circumstances will justify modification of the support award. The moving party has the burden of proving a material change by a preponderance of the evidence." Crabtree v. Crabtree, 17

Va. App. 81, 88, 435 S.E.2d 883, 888 (1993). Thus, contrary to husband's argument, wife bears no burden to produce any evidence or expert testimony; rather the burden of proving that his earning capacity was reduced as a result of a material change in circumstances rests entirely upon husband.

Furthermore, "a party seeking a reduction in support payments has additional burdens: 'He must make a full and clear disclosure relating to his ability to pay. He must also show that his lack of ability to pay is not due to his own voluntary act or because of his neglect.'" Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261 (1986) (emphasis added) (quoting Hammers v. Hammers, 216 Va. 30, 31-32, 216 S.E.2d 20, 21 (1975)). In other words, once he proves that a material change in circumstances has occurred, husband must then prove that the change in circumstances justifies a reduction in support payments by establishing "that he is not 'voluntarily unemployed or voluntarily under employed.'" Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991) (quoting Code § 20-108.1(B)(3)).

The record is clear that, for purposes of resolving the issue then before the trial court, the loss of Mango had no bearing on husband's earning capacity. Husband admitted that Mango had not been producing any income at the time income was originally imputed to him. As such, there is no presumption that income generated from Mango was factored into the trial court's original imputation of husband's income, and, therefore, the loss of Mango did not entitle husband to a reduction in the income originally imputed to him.

On the other hand, it is apparent that husband's earning capacity was reduced as a result of the dissolution of Wrangler. The evidence demonstrates that husband met his initial burden of proving that a material change in circumstances had occurred. We note, however, that the dissolution of Wrangler only applied to business conducted in Virginia. The record is clear that, although Wrangler was dissolved in Virginia, husband was still receiving income from

Wrangler's activities in other states, namely Maryland. Husband admitted as much when he attempted to explain the sizable deposits and withdrawals from his bank account. Thus, it is apparent that business in Virginia only represented a portion of the income generated by Wrangler. As income from Wrangler was presumptively factored into the court's original imputation of husband's income, husband was entitled to a reduction in the amount of income originally imputed to him. However, because the dissolution of Wrangler in Virginia only affected a portion of the overall income generated by Wrangler, husband was only entitled to a commensurate reduction in the amount of income originally imputed to him.

Finally, a parent

> "who shows a reduced ability to satisfy his obligation, which is not due to his wrongdoing, his neglect of his affairs, or his intentional diminution of his financial ability other than in connection with a bona fide and reasonable business undertaking, is entitled to have that reduction considered along with the other usual factors, including his general earning capability, in determining his child support obligation."

Antonelli, 242 Va. at 155, 409 S.E.2d at 119 (quoting Antonelli v. Antonelli, 11 Va. App. 89, 94, 396 S.E.2d 698, 701 (1990)).

Here, the trial court clearly determined that part of the reduction in husband's earning capacity was not due to any wrongdoing on his part (i.e., the downturn in the economy); however, the trial court also found that part of the reduction in husband's earning capacity was due to his own wrongdoing (i.e., voluntary underemployment or unemployment). It is well settled that, "[a]bsent clear evidence to the contrary in the record, the judgment of a trial court comes to an appellate court with a presumption that the law was correctly applied to the facts." Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995). As such, we must presume that the trial court reduced the amount of income imputed to husband based only on the earning capacity that was lost due to factors beyond his control, while still considering "the other usual

- 5 -

factors."[2] Accordingly, based on husband's voluntary underemployment, prior employment history, business connections, language skills, and the income husband received from Wrangler's operations in Maryland and other states, we cannot say that the trial court abused its discretion in only partially reducing the amount of income imputed to husband.

CONCLUSION

As there is evidence that husband's earning capacity was partially reduced due to factors beyond his control and partially reduced due to his own voluntary underemployment and his failure to make a full and clear disclosure as to his earning capacity, we cannot say the trial court abused its discretion by taking into account the dissolution of Wrangler while simultaneously finding husband's earning capacity to be greater than zero. Accordingly, the decision of the trial court is affirmed.

<u>Affirmed.</u>

---

[2] We further note that there was evidence in the record on which the trial court could base its ruling. For example, according to his bank records, between May 2009 and October 2009, husband deposited a total of $69,500, which averages out to $11,583.33 per month.