COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Clements and Senior Judge Coleman
Argued at Alexandria, Virginia


TIM PRICE O'HARA

v.      Record No. 0038-04-4

SANDRA H. O'HARA                                          OPINION BY
                                                JUDGE SAM W. COLEMAN III
SANDRA H. O'HARA                                            JUNE 7, 2005

v.      Record No. 0087-04-4

TIM PRICE O'HARA


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

Robin C. Gulick (T. Huntley Thorpe, III; Gulick, Carson & Thorpe,
P.C., on briefs), for Tim Price O'Hara.

Ann M. Callaway for Sandra H. O'Hara.


Tim Price O'Hara (husband) appeals a decision of the trial court denying his petition to

terminate his spousal support obligation.  On appeal, husband contends the trial court erred by:

(1) ruling husband had the burden to prove by clear and convincing evidence that Sandra H.

O'Hara (wife) habitually cohabitated with another person in a relationship analogous to marriage

for more than one year; (2) failing to grant the petition to terminate spousal support pursuant to

the terms of the parties' property settlement and separation agreement; and (3) failing to award

husband attorney's fees.  Wife filed a cross-appeal, contending the trial court erred by:  (1) ruling

that the exception to the termination of spousal support providing for "unconscionability" of

termination as set forth in Code § 20-109(A) was inapplicable to the case; and (2) finding wife is

employable.

We hold the trial court applied the incorrect burden of proof in determining whether wife habitually cohabitated with another person in a relationship analogous to marriage for one year or more. Accordingly, we reverse and vacate the trial court's decision not to terminate husband's spousal support obligation. We remand the case to the trial court for consideration of the issue applying the preponderance of the evidence burden of proof.

Background

Husband and wife were married in 1981. The parties separated in 1998. On February 8, 2000, they entered into a property settlement and separation agreement (PSA) which was affirmed, ratified, and incorporated, but not merged into the final divorce decree dated March 9, 2000. In paragraph 5(A) of the PSA, the parties agreed husband would pay wife $1,750 per month in spousal support

> until the death of [w]ife, the death of [h]usband, [w]ife's remarriage, *[w]ife's habitual cohabiting with another person in a relationship analogous to a marriage for one year or more*, or until further order of a court of competent jurisdiction based upon a proper petition filed by either party based upon a material change in circumstances.

(Emphasis added.)

In February 2003, husband filed a petition to terminate spousal support pursuant to the cohabitation provision of the PSA, alleging wife had been cohabitating in a relationship analogous to marriage with Donald Sowers, Jr. for more than one year. Alternatively, husband requested a modification of the support award based upon a material change of circumstances, asserting that wife was currently gainfully employed.

At the November 5, 2003 evidentiary hearing, Sowers testified he had known wife for about three and one-half years. Sowers had listed wife's address as his address on numerous court documents dating from November 2001 to October 2002. He indicated on court documents requesting court-appointed counsel that he was unemployed and had no income. A

document entitled Pretrial Services Court Report specified Sowers's address as the street address of wife. In the same document, Sowers indicated he had lived at that address for two years and that he lived with wife, whom he referred to in the document as his "significant other."

Sowers testified he resided with wife "on and off" since October 2000, stating he had no permanent residence and he moved from place to place, living with friends and relatives. He stated he used wife's residence as his mailing address for court related documents. Sowers testified he has cooked meals for wife and has performed maintenance on her property. He stated he slept in the same bedroom with wife and had sexual intercourse with her during part of their relationship.

Carrie Pearson, Sowers's probation officer, testified that Sowers had indicated to people in her office that his address was the same street address as wife's. Pearson met with Sowers on twelve occasions between February 2002 until the end of 2002. At every meeting she asked if he had changed his address. Sowers never indicated, as was required as a condition of his supervision, that his address had changed. Pearson stated that over the two-year period her office supervised Sowers's probation, he never indicated a change in address.

In November 2001, Deputy John Cox of the Fauquier County Sheriff's Office answered a domestic assault call from wife's residence. Cox testified that wife told him that Sowers was her "live-in boyfriend." Later, in a sworn affidavit that was part of a criminal complaint wife filed against Sowers in May 2002 she referred to Sowers as her "boyfriend of three years." Wife admitted that she told the magistrate Sowers was her "live-in boyfriend" or her "cohabitor." In January 2003, wife listed Sowers as an emergency contact in her employer's personnel records, referring to him as her "significant other." The emergency contact information for Sowers listed wife's telephone number and her post office box as where Sowers could be contacted. At one

time, the message on wife's answering machine contained wife's greeting stating, "Donnie and I aren't here. Please leave a message."

Wife testified that Sowers first began staying at her residence in October 2000 during which time they were sexually intimate. She stated that Sowers lived with her "off and on" and only "continuously" resided with her "basically from February 2001 until November 2001." Subsequently, they had tried to "patch things up" on several occasions during which time Sowers periodically would stay at her residence for several days. Wife stated that in May 2002, the relationship ended when Sowers was seeing another woman.

Wife testified that Sowers "sometimes" cooked for her and that they ate meals together. She stated Sowers helped with "some heavy work" on her property and she did not compensate him for that work. She gave Sowers permission to use her mailing address for court documents, and she posted a $1,000 bond for Sowers on one occasion. Wife testified both she and Sowers contributed money for groceries, but Sowers did not pay any monthly living expenses. She did not share any bank accounts with Sowers, who she said was employed sporadically during their relationship.

Several neighbors of wife testified that over the past three or four years, they have seen Sowers working on wife's lawn, shopping with her at the grocery store, sitting on wife's porch, eating dinner with wife at local restaurants, and riding in wife's vehicle. Husband testified that he had been to wife's residence twice since their separation and Sowers was present both times.

Wife has numerous health problems which she contends make it difficult for her to be employed full time. She pays more than $400 per month for health insurance, which she says will end in March 2005. She testified the Social Security Administration has declared her totally disabled for which she receives $799 per month in Social Security disability benefits. Also, wife received $177 per week in unemployment benefits for the weeks she qualified. In 2002, wife

earned "about" $10,000, but she said the $10,000 included business expenses and her net income was about $4,500. In 2003, she was employed as a "permit runner" for a deck construction company from January until August, earning approximately $2,500 per month. Wife's employer terminated her employment in August 2003 after a disagreement concerning wife's compensation. Wife testified she had worked in order to obtain health insurance and she planned to quit as soon as she qualified for health insurance.

The trial court found that wife and Sowers had cohabitated, however, the court held that it could not "find by clear and convincing evidence that this is a relationship analogous to marriage." The trial court cited as factors in its decision the lack of an expression of a commitment between wife and Sowers and the lack of financial contributions to the relationship by Sowers. The trial court further stated it was a "close case" and that had it applied a preponderance of the evidence burden of proof, the court "might be persuaded" that the relationship was analogous to a marriage. Thus, using the clear and convincing standard, the trial court denied husband's petition to terminate spousal support.

The trial court found, however, that a material change in circumstances had occurred warranting a reduction in the amount of wife's spousal support award. The trial court found that, despite wife's serious medical issues, she is employable and that she was terminated from her last job due to a disagreement with her employer, not because she was physically unable to work. The court imputed annual income of $12,000 to wife, considered husband's current income, and reduced wife's monthly spousal support award from $1,750 to $1,200, effective November 1, 2003.

The trial court also ruled that the unconscionability provision of Code § 20-109(A)(ii) did not apply, and the court denied husband's request for attorney's fees. Both parties objected to the trial court's final decisions and filed appeals in this Court.

Analysis

The trial court ruled that, in determining whether wife had cohabited with Sowers in a relationship analogous to marriage, the provisions of Code § 20-109(A) applied and that husband had to prove the cohabitation by clear and convincing evidence. Husband argues that his petition for termination of spousal support was governed by the terms of the parties' PSA, not by Code § 20-109(A). Therefore, he contends the court erred by determining that husband had to prove cohabitation by clear and convincing evidence, rather than the contractual standard of a preponderance of the evidence. We agree with husband.

Code § 20-109(A) provides in pertinent part:

> Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court shall terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would be unconscionable.

The parties entered into a PSA which was affirmed, ratified, and incorporated into the March 9, 2000 final divorce decree. Thus, the final decree "embodied and enforced . . . a negotiated agreement between the parties vesting" husband with a "contractual right" to terminate wife's spousal support in the event that wife habitually cohabitated with another person in a relationship analogous to a marriage for one year or more. See Baldwin v. Baldwin, 44 Va. App. 93, 98, 603 S.E.2d 172, 174 (2004). See also Hering v. Hering, 33 Va. App. 368, 374, 533 S.E.2d 631, 634 (2000) ("the parties' agreement, which was affirmed and incorporated, but not merged, into the final decree, remained a separate, enforceable, contractual obligation"). Furthermore, "[t]he decree's contractual character places it within the general rule recognizing that vested contractual rights – whether incorporated by, memorialized in, or merged into a final decree – 'cannot be judicially modified or terminated at the unilateral request of a contract party

- 6 -

unless the agreement expressly authorizes such relief.'" Baldwin, 44 Va. App. at 99, 603 S.E.2d at 174 (quoting Newman v. Newman, 42 Va. App. 557, 568-69, 593 S.E.2d 533, 539 (2004) (*en banc*)).

The PSA, which was affirmed, ratified, and incorporated into the final decree, expressly authorized the termination of spousal support if wife habitually cohabited with another person in a relationship analogous to a marriage for one year or more. Husband filed the petition for termination of spousal support pursuant to the PSA, which we note does not reference Code § 20-109(A). Accordingly, Code § 20-109(A), and its clear and convincing burden of proof, does not apply to this case involving the enforcement of a negotiated agreement between husband and wife. Rather, because this case involves an action to enforce a contract between the parties, husband's burden was to prove by a preponderance of the evidence that wife habitually cohabited with another person in a relationship analogous to a marriage for one year or more, not to prove cohabitation by clear and convincing evidence. See Hammers v. Hammers, 216 Va. 30, 31, 216 S.E.2d. 20, 21 (1975); Crosby v. Crosby, 182 Va. 461, 464, 29 S.E.2d 241, 242 (1944). Therefore, the trial court applied the incorrect evidentiary standard when considering this issue. Accordingly, we reverse and vacate the trial court's holding and remand the case to the trial court for reconsideration of this issue using the preponderance of the evidence burden of proof.

We also note that this case is distinguishable from Hardesty v. Hardesty, 40 Va. App. 663, 581 S.E.2d 213 (2003) (*en banc*). In Hardesty, the parties signed a PSA which was "affirm[ed], ratif[ied] and incorporate[d]" into the final divorce decree. Id. at 666, 581 S.E.2d at 215. The Hardesty PSA provided that spousal "support cannot be terminated for any reason." Id. at 665, 581 S.E.2d at 215. Mrs. Hardesty filed an action with the trial court seeking a declaratory judgment holding that the PSA precluded the termination of spousal support upon her remarriage. This Court affirmed the trial court's ruling that spousal support would terminate

upon Mrs. Hardesty's remarriage pursuant to the terms of Code § 20-109. We stated: "'The public policy clearly declared by Code §§ 20-109 and 20-109.1 is that spousal support does not survive the recipient's remarriage. To create an exception to that policy, the agreement must be equally clear.'" Id. at 668, 581 S.E.2d at 216 (quoting Langley v. Johnson, 27 Va. App. 365, 371-72, 499 S.E.2d 15, 18 (1998)). Thus, Hardesty held that the public policy underlying termination of spousal support upon remarriage as provided in Code § 20-109(D) could not be overcome by the general proposition prohibiting termination "for any reason." Here, no public policy is at play that draws the statutory and contractual provisions, both of which provide for termination upon cohabitation analogous to marriage, into conflict with one another. The provisions of the PSA and Code § 20-109(A) are compatible with one another as to their purpose and function. They differ as to what burden of proof rests with the proponent. Therefore, Hardesty is inapplicable to the analysis of this case.

Because we remand the case to the trial court for a determination of the first issue using the preponderance of the evidence standard, we do not address husband's second issue--whether under either the preponderance of the evidence or the clear and convincing evidence burden of proof, the evidence showed wife cohabitated with Sowers in a relationship analogous to marriage for more than one year. We are not prepared to say on this record that, as a matter of law, wife habitually cohabitated with Sowers in a relationship analogous to marriage for more than one year. That is a factual determination that the trial court must consider upon conflicting evidence upon remand.

Because we have found that Code § 20-109 does not apply to this case, we do not address wife's first issue raised in her cross-appeal–whether the trial court erred by ruling that the "unconscionability" provision of Code § 20-109(A)(ii) is inapplicable to this case.

Wife also contends the trial court erred by finding that she is employable despite a declaration from the Social Security Administration that she is totally disabled.

The declaration of the Social Security Administration was not dispositive of whether the trial court properly imputed income to wife. "[A] court may impute income to a party who is voluntarily unemployed or underemployed. Imputation of income is based on the principle that a spouse should not be allowed to choose a low paying position that penalizes the other spouse . . . ." Calvert v. Calvert, 18 Va. App. 781, 784-85, 447 S.E.2d 875, 876-77 (1994) (citations omitted).

> Whether a person is voluntarily unemployed or underemployed is a factual determination. In evaluating a request to impute income, the trial court must "consider the [parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children."

Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999) (citation omitted). "Imputation of income is within the trial [court]'s discretion . . . ." Sargent v. Sargent, 20 Va. App. 694, 704, 460 S.E.2d 596, 601 (1995).

The evidence showed that wife was employed in a full time job for about seven months in 2003 and the job terminated due to a disagreement between wife and her employer concerning her compensation. Therefore, wife did not leave her employment for health reasons. Although the evidence shows wife has serious health issues, we cannot say the trial court abused its discretion by finding that wife is able to be employed and imputing to her an income of $12,000 per year, which the court based on an average of wife's income over the past several years.

Husband contends the trial court erred by denying his request for attorney's fees on the ground that the PSA provides that "[i]n the event one of the parties defaults in the performance of any of the provisions of [the PSA], the defaulting party will indemnify the other party for all reasonable expenses and costs, including any attorney's fees, incurred in successfully enforcing

the terms of [the PSA]." The trial court ruled that husband was not entitled to attorney's fees because his action to modify and terminate spousal support was not an attempt to enforce a "default in the performance" of the PSA. Rather, the trial court viewed the matter as "a proceeding to modify the existing support arrangements [based upon contractual provisions in the PSA, but was] . . . not the enforcement of a default" in performing the PSA. Accordingly, the trial court ruled that husband was not entitled to attorney's fees pursuant to the terms of the PSA.

Husband's request for attorney's fees is governed by the express provisions of the PSA for attorney's fees. See Rutledge v. Rutledge, 45 Va. App. 56, 67, 608 S.E.2d 504, 509 (2005) (applying Code § 20-109(C) and affirming the trial court's denial of attorney's fees in accordance with the terms of the parties' PSA). Here, paragraph 14 of the PSA, which expressly provided for reasonable attorney's fees "[i]n the event that either party *defaults* in the performance of any of the provisions of [the PSA]," is not applicable because this was not an action enforcing a default in the terms of the PSA. (Emphasis added.) We agree with the trial court's ruling that this case involves a proceeding to modify or terminate the spousal support award as provided by the PSA but was not a proceeding to enforce a default. Accordingly, the trial court did not err by refusing to award attorney's fees based upon the provisions in the PSA.

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Affirmed in part,
reversed in part
and remanded.