COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Beales and Powell
Argued at Alexandria, Virginia


GERRI PAIGE BUTTERMAN

MEMORANDUM OPINION[*] BY
v.        Record No. 3007-08-4            JUDGE CLEO E. POWELL
                                          AUGUST 18, 2009

ALEXANDER HERBERT BUTTERMAN


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

David G. Hubbard (Leiser, Leiser & Hennessy, PLLC, on brief),
for appellant.

David M. Levy (Camille Allan; Surovell, Markle, Isaacs & Levy,
PLC, on brief), for appellee.


Gerri Paige Butterman ("wife") appeals an order of the Circuit Court of Fairfax County

granting Alexander Herbert Butterman ("husband") sole legal and physical custody of the

parties' children.  Wife also appeals the court's decision to limit her spousal support and to

apportion debts related to the children's therapy equally between the parties.  Finding no error,

we affirm the decision of the trial court.

BACKGROUND

Husband and wife were married on June 29, 1996 in New York.  Two children were born

of the marriage.  In mid-June, 2006, husband began to notice wife acting strangely.  Over the

next two days, husband observed wife's odd behavior becoming progressively worse, to the

point where she was rambling and speaking in codes.  After wife was unable to order dinner at a

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

restaurant, husband and wife's father convinced wife that she needed to be admitted to the hospital. Wife was released from the hospital on June 20, 2006.

On June 23, 2006, wife again began to act strangely. As before, wife's behavior became progressively worse as time went on. Wife then began calling 911, asking the police to take her to the hospital because she did not want to go with husband. The police eventually took her to the hospital. Following an involuntary commitment hearing, wife was released from the hospital on June 26, 2006.

On June 27, 2006, wife called 911 ten times, from 9:00 p.m. until 7:00 a.m. the next morning, reporting that husband was abusing her. When the police finally arrived at 7:00 a.m., they found husband sleeping in his bed. After determining that wife was making false reports, they arrested her and took her to jail. Wife then refused to get dressed for her arraignment and spent a total of nine days in jail before being released. In January and February of 2008, wife's family made at least four more attempts to have her involuntarily committed due to her erratic behavior.

Soon after the June 27, 2006 incident, the parties realized that their marriage was at an end. They subsequently entered into a time-limited separation agreement, which gave wife physical custody of the parties' children. The separation agreement expired at the end of February, 2007. In light of the expiration of the separation agreement, a *pendente lite* hearing was scheduled for March 13, 2007. However, on March 12, 2007, wife insisted husband take custody of the children the next day. Wife relinquished custody to husband on March 13, 2007 and moved to Florida.

Husband took the necessary steps to transfer the children to a new school district, as they had been living in Leesburg with wife, and husband lived in Vienna. However, due to the suddenness of the transfer, there were a number of problems. During the 2007-08 school year,

the children had over 101 tardies each. Carrie Powers, the school counselor for the children, testified that, although the number of tardies was high, it appeared to be more related to anxiety on the part of one of the children, rather than anything husband was doing incorrectly. She also testified that there was definite improvement toward the end of the school year, as the children became more accustomed to their new environment.

Due to his work schedule, husband was forced to hire a nanny to care for the children. The nanny would care for the children during the day while husband was at work. In October of 2007, while under the supervision of the nanny, there was an incident where the nanny's thirteen-year-old brother touched one of the children inappropriately. The police investigated the incident and recommended against prosecuting the nanny's brother, because, in their determination, this was a case of the brother being immature, and they did not believe that he was being cruel or malicious. Additionally, the police officers believed that any subsequent prosecution would be more traumatizing to the child.

A two-day evidentiary hearing was held on August 12 and 13, 2008 in order to determine custody of the children. During the hearing, husband admitted that he had violated the court's *pendente lite* order by bringing his children with him when he went to see his girlfriend on the weekends. Husband apologized to the trial court and explained that, due to his schedule, the only time that he could see his girlfriend and his children was during the weekend. Additionally, he explained that his girlfriend has two children who are the same age as his children. According to husband, the children's exposure to his girlfriend and her children was a positive thing, because the children got along great and it felt like a "large family."

After hearing all of the evidence, the trial court considered the statutory factors and determined that husband would have full physical and legal custody of the children. The trial court granted wife telephone visitation twice a week, supervised visitation within the

Washington D.C. metro area, and one week of visitation in Florida during the summer, to be supervised by the maternal grandparents. Additionally, the trial court found husband was "technically in contempt," for violating the *pendente lite* order and fined him one (1) dollar. However, the trial court subsequently suspended the finding of contempt.

On October 14, 2008 another evidentiary hearing was held in order to determine matters of equitable distribution, child support, and spousal support. The trial court considered the statutory factors and apportioned all existing marital debt equally between the parties. This consisted of a tax lien on wife's vehicle and a $3,888 debt relating to the children's therapy.

On the issue of spousal support, the trial court determined that wife was entitled to $2,000/month in spousal support for one year. She would then receive only $1,000/month in spousal support for the following five years. In making this ruling, the trial court stated that it was not convinced that wife could not work, due to the "lack of any medical evidence and the credibility of [wife]."

On the issue of child support, the trial court considered the evidence and the factors and determined that husband was entitled to receive child support from wife. However, the trial court noted that the application of the guidelines in this case would be unjust and inappropriate, due to the nature of portions of both parties' income.[1] The trial court ordered that the amount of child support should be set by removing the anomalous income from both parties and imputing an income of $35,000/year to wife, based on her past work experience. As a result, husband was awarded child support in the amount of $1,017 per month.

Wife appeals.

---

[1] Wife had recently received a one-time lump sum payment that was factored in, whereas husband was receiving financial assistance from his father.

ANALYSIS

A. Child Custody

Wife argues that the trial court ignored husband's "highly problematic circumstances" and focused solely on her physical and mental condition as the basis for the sole custody award. Wife specifically contends that, based on the evidence adduced at trial, the trial court disregarded the factors enumerated in Code § 20-124.3 in making its custody decision.

When determining custody, "the controlling consideration is always the child's welfare." Sutherland v. Sutherland, 14 Va. App. 42, 43, 414 S.E.2d 617, 618 (1992). However, "the trial court has broad discretion in determining what promotes the children's best interests." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

> Code § 20-124.3 specifies the factors a court "shall consider" in determining the "best interests of a child for . . . custody or visitation." Although the trial court must examine all factors set out in Code § 20-124.3, "it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)). As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal. See Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 578 (1992).

Brown, 30 Va. App. at 538, 518 S.E.2d at 338.

This Court has previously held that "Code § 20-124.3 requires the trial court to identify the fundamental, predominating reason or reasons underlying its decision." Kane v. Szymczak, 41 Va. App. 365, 372-73, 686 S.E.2d 349, 353 (2003). "To satisfy Code § 20-124.3, therefore, the trial court must provide a case-specific explanation (one that finds its contextual meaning

from the evidence before the court) of the fundamental, predominating reason or reasons for the decision." Id. at 373, 686 S.E.2d at 353.[2]

Wife relies heavily on Petry v. Petry, 41 Va. App. 782, 589 S.E.2d 458 (2003), for the notion that because wife stayed home with the children and husband worked long hours, wife should automatically get custody. However, wife's reliance on Petry is misplaced. Although wife is correct that the father in Petry worked long hours, much like husband in the present case, there are few, if any, additional similarities. In Petry the father began having an adulterous affair, abandoned his family, and did not request any visitation. Under those circumstances, this Court determined that the trial court had not abused its discretion in granting the mother's request to move with the children to New York. Id. at 796, 589 S.E.2d 465.

None of the additional facts in Petry are present in this case. Here, husband has neither had an adulterous affair nor did he abandon his family. To the contrary, husband took the children in on a day's notice from wife and affirmatively sought sole legal and physical custody.

It is clear that the trial court examined all of the factors in making its ruling. In fact, the trial court's analysis exceeded ten (10) pages of transcript. The record demonstrates that the trial court specifically addressed several of the issues wife claims the trial court disregarded or ignored. Contrary to wife's argument, the trial court specifically addressed the facts, particularly the issue of tardiness, which the trial court noted had improved; husband's girlfriend and her family, which the trial court commented was a positive factor; and the issue of the husband's decision to not administer the children's medication, which the trial court weighed against wife's propensity to be an "internet doctor." Furthermore, in summarizing the evidence, the trial court

---

[2] Wife attempts to characterize this Court's holding in Kane as requiring the trial court provide a "fundamental, predominating reason" for each part of its decision, not just the decision as a whole (i.e. the court must give a reason for its custody decision, another reason for its visitation decision, etc.). However, nothing in Kane indicates that the trial court must provide more than the fundamental, predominating reason for its decision as a whole.

- 6 -

explained that, while husband's circumstances were "not ideal," "[wife]'s condition . . . leaves me with no choice." So, while wife argues that the trial court ignored the factors, in reality the trial court weighed the factors and found that they were in husband's favor. The trial court is certainly allowed to do this and committed no error in doing so. Accordingly, we hold the trial court did not abuse its discretion in granting sole legal and physical custody to husband.

### B. Spousal Support and Imputed Income

Wife argues that the trial court abused its discretion by finding that she is able to work and imputing to her an income of $35,000 per year. Specifically, wife contends that the trial court ignored the fact that she was receiving disability payments from the Social Security Administration in making its decision.

"Whether spousal support should be paid is largely a matter committed to the sound discretion of the trial court, subject to the provisions of Code § 20-107.1." McGuire v. McGuire, 10 Va. App. 248, 251, 391 S.E.2d 344, 346 (1990). "A party seeking spousal support bears the burden of proving all the facts necessary for an award." Robbins v. Robbins, 48 Va. App. 466, 484, 632 S.E.2d 615, 624 (2006). "In fixing the amount of the spousal support award, . . . the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion. We will reverse the trial court only when its decision is plainly wrong or without evidence to support it." Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992) (citations omitted).

This Court has previously held that "[t]he declaration of the Social Security Administration [is] not dispositive of whether the trial court properly imputed income to wife." O'Hara v. O'Hara, 45 Va. App. 788, 797, 613 S.E.2d 859, 864 (2005). Rather, "[a] court may impute income to a party who is voluntarily unemployed or underemployed. Imputation of income is based on the principle that a spouse should not be allowed to choose a low paying

- 7 -

position that penalizes the other spouse." Calvert v. Calvert, 18 Va. App. 781, 784-85, 447

S.E.2d 875, 876-77 (1994).

> Whether a person is voluntarily unemployed or underemployed is a factual determination. In evaluating a request to impute income, the trial court must "consider the [parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children."

Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999) (quoting Niemiec v.

Commonwealth, 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998)).

In the present case, the record shows that wife qualified for disability benefits in 2004.

The evidence further shows that despite the fact that she qualified for disability benefits, wife

returned to work in February of 2005 where she was expected to work twelve (12) hour days.

She left that employment in June 2005 because she "didn't really care for the assistant manager."

She subsequently found a much better job in the same field and worked at that job until August

of 2005.

Aside from her own testimony, wife offered no further evidence to prove that she was

actually disabled or to demonstrate how her health issues currently affected her ability to work.

Furthermore, she testified that she had made no recent effort to find a job to take advantage of

various programs offered by the Social Security Administration which would allow her to obtain

employment and continue to receive disability benefits.

It is well established that "'[t]he credibility of witnesses and the weight accorded their

testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the

witnesses.'" Commonwealth v. Jackson, 276 Va. 184, 197, 661 S.E.2d 810, 816 (2008) (quoting

Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985)). The

conclusions drawn by the fact finder on credibility issues may be disturbed on appeal only if the

appellate court finds that the witness' testimony was "inherently incredible, or so contrary to

human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" Ashby v. Commonwealth, 33 Va. App. 540, 548, 535 S.E.2d 182, 187 (2000) (quoting Schneider, 230 Va. at 382, 337 S.E.2d at 736-37).

It is readily apparent that the trial court did not find wife's testimony regarding how her disability affected her ability to work credible. In making its decision, the trial court noted that wife "was engaged throughout the hearing, did not complain of any major pain or discomfort, and did not have any difficulty paying attention to or participating in the proceedings. In fact, at times she could be quite animated." The trial court subsequently held that, "[b]ased on the lack of any medical evidence and the credibility of [wife], I am not convinced that she cannot work." As there is no evidence of plain error on the part of the trial court, we cannot say that the trial court abused its discretion in finding that appellant is able to be employed and imputing to her an income of $35,000 per year, which the court based on an average of wife's income over the past several years that she worked.

### C. Equitable Distribution

Wife argues that, in light of the fact that husband makes considerably more money than she does, the trial court erred in apportioning debts related to the children's therapy equally between the parties. However, wife cites no authority requiring a trial court to apportion debts proportionate to the parties' income. We further note that, in addition to the children's therapy debts, the trial court also required husband to pay half of the tax lien on wife's vehicle.

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). "In

reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990).

The fact that the debts were apportioned in a manner that wife disagrees with does not demonstrate that the decision of the trial court was plainly wrong or without evidence to support it. Accordingly, we cannot say that the trial court abused its discretion in apportioning the children's therapy debts equally between the parties.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.