COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, Athey and Senior Judge Frank
Argued by videoconference

PUBLISHED

JACQUELINE M. NIELSEN

                                                    OPINION BY
v.        Record No. 0010-21-4          JUDGE WILLIAM G. PETTY
                                                    JULY 27, 2021
ALAN H. NIELSEN


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellant.

John H. Kitzmann (Hope F. Rosen; Davidson & Kitzmann, PLC;
ShounBach, on brief), for appellee.


       Appellant argues on appeal that the trial court should not have found a material change of

circumstances and should not have decreased spousal support after appellee's prior decision to

accept a separation package from his previous employer.  We conclude the trial court did not err

in finding a material change in circumstances and did not abuse its discretion in determining the

modified spousal support amount.

I.  BACKGROUND

       "When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258 (2003).

       Jacqueline M. Nielsen (wife) and Alan H. Nielsen (husband) were married in 1987.  In

2016, the parties signed a separation agreement.  At the time of the divorce decree in 2017, the

trial court awarded wife $10,000 per month in spousal support until November 1, 2027,

consistent with the separation agreement.  During the relevant years of 2016 and 2017, husband

worked for AOL as Vice President of Corporate Services, a title he had held for about ten years.[1]

His duties included design, construction, and management of leased real estate globally. The real estate operations included security, card access administration, corporate travel, data center management, food service for the organization, mailing and shipping, and maintaining printers for sixty-five offices globally. Husband's base salary at AOL was $250,000, and, with bonuses and stock, his total earnings were $712,000 in 2016 and $364,000 in 2017. Husband's earnings for 2018 were $557,000.

AOL was purchased by Verizon, and during 2018 Verizon began bringing some of AOL's operations under Verizon to manage them directly. Husband became an employee of Verizon in fall 2018. His job title was changed to Director of Facility Operations. As part of the change, husband was no longer responsible for global operations. He was no longer responsible for food service and mailing and printing functions. He was no longer responsible for corporate travel functions. Husband testified that, except for some specific security and active construction projects, all his other functions and staff were realigned into the Verizon business units. Husband's staff decreased from twenty-five employees to four employees.

In September 2018, Verizon offered its employees a voluntary separation package. Husband testified that it was clear to him that his position was being eliminated, as he had seen similar positions eliminated during the company's realignment.[2] Husband felt there was no future for his position with Verizon based on his significantly diminished responsibilities. Husband's employment with Verizon ended in December 2018. His separation payment was paid in 2019 and totaled $825,000.

---

[1] The parties and trial court referred to husband's employers as "AOL," "Verizon," and "CPG." We will refer to them the same way. For the sake of clarity, we do not include Verizon's temporary joining of AOL and another subsidiary in an entity called "Oath."

[2] Husband acknowledged that he was not told by Verizon that he would be terminated.

Husband continued to make spousal support payments as he looked for new employment. Husband "leveraged [his] network" and spoke to recruiters. He spoke with thirty or forty companies and had a dozen interviews but received no offers. After ten months, husband took a short-term consulting engagement with CPG for a project in Canada. When that project ended in January 2020, CPG asked husband to consult on a construction project in Washington State. When that project was successfully completed, CPG offered husband a full-time position with CPG effective May 2020. Husband had this job at the time of the hearing on modification of spousal support. His salary was $250,000 with a potential bonus of $50,000.

Husband filed a motion to modify spousal support in December 2019.[3] At the September 30, 2020 hearing, the trial court received testimony and exhibits from the parties. Wife argued that there was no material change of circumstances because husband had left Verizon voluntarily and he had sufficient assets to pay the initial support award. The trial court found a material change of circumstances, found husband's departure from Verizon was not voluntary, and found that based on the parties' needs, income, and assets the spousal support amount should be reduced to $6,000 per month.

Wife now appeals the trial court's decision. Wife's assignments of error can be distilled to three issues—whether the trial court erred in finding a material change in circumstances, whether the trial court erred in finding husband's departure from Verizon was not voluntary, and whether the trial court abused its discretion in reducing wife's spousal support.

## II. ANALYSIS

Code § 20-109(B) authorizes a trial court to consider a modification of an award of spousal support. "The moving party in a petition for modification of support is required to prove

---

[3] Husband filed an amended motion for modification in April 2020, adding an allegation that wife was in a relationship analogous to marriage. The trial court did not find sufficient evidence of such a relationship. That decision is not before us in this appeal.

both a material change in circumstances and that this change warrants a modification of support." Dailey v. Dailey, 59 Va. App. 734, 742-43 (2012) (quoting Moreno v. Moreno, 24 Va. App. 190, 195 (1997)). The trial court then has broad discretion in deciding whether the spousal support award should be modified and, if so, by how much. Broadhead v. Broadhead, 51 Va. App. 170, 180 (2008).

## A. Material Change of Circumstances[4]

Wife argues that because husband voluntarily left his employment in 2018 and because he had sufficient assets from which he could have paid spousal support, it was error for the trial court to find a material change in circumstances. Wife argues that husband "took the risk by changing employment and this decision does not constitute a material change in circumstances to even get to stage two where the current financial status of the parties has to be addressed." Wife's argument conflates the two steps in the trial court's consideration.

Before a court may consider a party's motion to modify a support obligation, it must find a material change of circumstances. Barrs v. Barrs, 45 Va. App. 500, 506 (2005); Driscoll v. Hunter, 59 Va. App. 22, 33 (2011) ("A material change in circumstances, by itself, does not require the alteration of a spousal support award. Instead, the party seeking modification must show, in addition to a material change in circumstances, that the change 'warrants a modification of support.'" (quoting Moreno, 24 Va. App. at 195)). "The material change in circumstances must have occurred after the most recent judicial review of the award," Barrs, 45 Va. App. at

---

[4] To the extent that wife's first and second assignments of error deal with a motion to strike after husband's case-in-chief, we do not consider those arguments. See Rompalo v. Commonwealth, 72 Va. App. 147, 154 (2020), aff'd, __Va. __ (May 20, 2021) ("Under Virginia law, '[w]hen a defendant in a civil or criminal case proceeds to introduce evidence in his own behalf, after the trial court has overruled his motion to strike, made at the conclusion of the introduction of plaintiff's evidence in chief, he waives his right to stand upon such motion.'" (quoting McDowell v. Commonwealth, 282 Va. 341, 342 (2011))). Wife's first and second assignments of error are otherwise addressed here.

506, and "not reasonably [have been] in the contemplation of the parties when the [most recent] award was made," Code § 20-109(B). The statutory scheme for modifying spousal support permits the court to consider modification only

> upon finding (i) there has been a material change in the circumstances of the parties, not reasonably in the contemplation of the parties when the award was made or (ii) an event which the court anticipated would occur during the duration of the award and which was significant in the making of the award, does not in fact occur through no fault of the party seeking the modification.

Code § 20-109(B). Likewise, Code § 20-109(G) lists factors for the court to consider "if the court finds that there has been a material change in circumstances." Thus, the court's authority to consider a modification of spousal support is distinct from, and follows, the court's finding of a material change of circumstances.

"Significant changes in income often will constitute a material change in circumstances, thus satisfying the first component of that test." Dailey, 59 Va. App. at 740. Whether there has been a material change of circumstances is a factual finding. Barrs, 45 Va. App. at 507. Moreover, "[w]e will not disturb the trial court's decision where it is based on an *ore tenus* hearing, unless it is 'plainly wrong or without evidence in the record to support it.'" Id. (quoting Furr v. Furr, 13 Va. App. 479, 481 (1992)).

Here, the trial court found a material change of circumstances based on the evidence that husband's "income has changed substantially . . . for the worse since . . . the divorce." The evidence presented at the hearing supported that finding. At the time of the April 2016 separation agreement establishing the initial spousal support award, husband was employed at AOL as Vice President of Corporate Services. His earnings from AOL that year, including bonuses and stock, was $712,000. At the time of the modification hearing in September 2020, AOL no longer existed as an independent company. Husband was employed as a project manager by CPG at a salary of $250,000 with a potential $50,000 bonus. Thus, "[t]he record

shows that [husband] experienced the material change in circumstance necessary for the trial court to review his [spousal] support obligation, namely, that his actual income was much lower in [2020] than at the time of the initial award." Broadhead, 51 Va. App. at 181.

Nevertheless, wife argues that "based on the principles of Antonelli[ v. Antonelli, 242 Va. 152 (1991)]," husband's departure from Verizon by a "voluntary separation agreement" should "not have been the basis for a material change of circumstances." As we explained, the reduction in husband's income was a material change of circumstances, and we do not agree that Antonelli requires a different outcome. In Antonelli, the Supreme Court affirmed the chancellor's ruling that "the father had proved 'there was a financial change in circumstances' and that this [change was] a material change of circumstances." Antonelli, 242 Va. at 154, 156. Contrary to wife's argument that Antonelli precludes a finding of material change of circumstances when a party voluntarily leaves employment, the Supreme Court's analysis of Antonelli supports our conclusion that a material change of circumstances is distinct from, and precedes, the consideration of whether a reduction in support is justified.

A finding of a material change of circumstances does not, of course, require the court to modify the support amount. It is simply the gate through which the party requesting modification of support must pass before the trial court has authority under Code § 20-109 to "consider a modification of an award of spousal support." Code § 20-109(B); see Edwards v. Lowry, 232 Va. 110, 112 (1986). A court might conclude that factors such as ample assets or voluntary underemployment do not support a modification of the support payments. That does not, however, negate a finding that a party's substantial reduction in wages is a material change of circumstances not anticipated by the parties. See Dailey, 59 Va. App. at 740.

- 6 -

B. Voluntary Underemployment[5]

Wife argues that the trial court erred in finding husband's underemployment was not voluntary. Wife's argument focuses exclusively on husband's departure in 2018 from his employment with Verizon, asserting that the husband's acceptance of a "voluntary separation package" required the trial court to find his departure was voluntary and thereby also required the court to leave wife's spousal support award intact.

1. Application of Broadhead v. Broadhead

In reviewing the trial court's factual finding, this Court's decision in Broadhead is instructive. In that case, a man was involuntarily promoted to a different management position with different duties. Broadhead, 51 Va. App. at 175. After he "was not very successful in his position," he and the company reached "a mutual agreement" whereby he agreed to leave the company, and the company paid him a generous separation package. Id. This Court concluded "it is clear" the man's departure from the company "was not voluntary." Id. at 182. Four years later, after another change of employer, the man filed a motion to modify his support obligations. Id. at 177.

We note first that, as this Court explained in Broadhead, when a party alleges voluntary underemployment, "[t]he proper analysis evaluates whether [the spouse] is *currently* voluntarily underemployed, based on the position he holds, his current income level, the reasonableness of [his] efforts to find employment, and the availability of other positions at higher income levels, given his education and experience." Id. at 181. The probative value of a departure from employment, whether voluntary or not, on *current* earning capacity diminishes over time. Here, as in Broadhead, there was an extended period between husband's current employment and husband's employment with Verizon, which is the employment wife solely focused on. Thus,

---

[5] This section addresses wife's third, fourth, and fifth assignments of error.

- 7 -

husband's departure from his job with Verizon, whether voluntary or not, is relevant only to the extent it bears upon husband's *current* level of earning capacity. Nevertheless, "it is certainly appropriate to weigh the sequence of events leading to his current employment beginning with his departure from [his prior employer]." Id. at 182. The circumstances surrounding husband's departure from Verizon were a factor the trial court could consider in determining whether husband was currently underemployed. Accordingly, we consider whether the trial court erred, as wife contends, in finding husband's departure from Verizon was not voluntary.

"Unless the trial judge misapplies the legal standard or misallocates the burden of proof, the question of '[w]hether a person is voluntarily unemployed or underemployed is a factual determination.'" Id. at 180 (quoting O'Hara v. O'Hara, 45 Va. App. 788, 798 (2005)). "Employing the most deferential standard of appellate review, we reverse factual findings "only if plainly wrong or not supported by credible evidence." Id. at 181 (quoting Budnick v. Budnick, 42 Va. App. 823, 841 (2004)).

Here, the trial court acknowledged that there "was no gun to his head" when husband accepted a "voluntary separation package" from Verizon. The court nonetheless made a factual finding that husband's departure from Verizon was not voluntary. The court reasoned that voluntary meant "unconstrained by interference, not impelled by outside influence." See Voluntary, Black's Law Dictionary (11th ed. 2021). The court concluded that husband was impelled to leave Verizon "because of circumstances outside his control," which included changes in his employment, responsibilities, and job title.

Credible evidence supported the trial court's finding. Similar to the man's involuntary transfer in Broadhead, husband had no control over becoming a Verizon employee when Verizon bought AOL and absorbed AOL's employees into its own business structure. Husband experienced significant changes in his position that were outside his control, and, unlike the man

in Broadhead, husband's responsibilities were substantially diminished. Husband's title was changed, his responsibilities were significantly reduced, and his staff was cut from twenty-five to four. He testified, "All my other functions and people were realigned into [Verizon's] business units where [Verizon] could manage those directly." He believed Verizon was "essentially looking to reduce costs," and "it was clear to [him] that [his] position was being eliminated." As in Broadhead, the company offered husband a voluntary separation package, which he accepted. We cannot say, under the reasoning of Broadhead, that the trial court erred in finding that husband was impelled by the changes in circumstances that were beyond his control to accept the separation package and leave. We will therefore not disturb the trial court's factual finding that husband's separation from Verizon was not voluntary. See Cirrito v. Cirrito, 44 Va. App. 287, 304 (2004) ("In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses." (quoting Moreno, 24 Va. App. at 195)).

2. Wife's Reliance on Antonelli

Wife relied heavily before the trial court, on brief before this Court, and at oral argument on Antonelli v. Antonelli, 242 Va. 152 (1991), and its analysis of Edwards v. Lowry, 232 Va. 110 (1986). Wife suggests Antonelli sets the "standard" for determining a voluntary employment decision and that application of this standard requires us to reverse the trial court.

In Antonelli, this Court, relying on the Supreme Court's guidance in Edwards, reversed the chancellor's denial of a father's request to reduce child support; this Court concluded that the chancellor had found a change of circumstances but failed to find "the required corollary finding of whether this change justified the reduction sought." Antonelli, 242 Va. at 155 (quoting Antonelli v. Antonelli, 11 Va. App. 89, 94 (1990)). This Court remanded for a reconsideration of the merits. On appeal of this Court's decision, the Supreme Court "agree[d] with the gloss the

- 9 -

Court of Appeals has placed on <u>Edwards</u> [but] disagree[d] with the application of those principles to [the <u>Antonelli</u>] case." <u>Id.</u> This Court's gloss on <u>Edwards</u>, as summarized by the Supreme Court, was that a parent

> who shows a reduced ability to satisfy his obligation, which is not due to his wrongdoing, his neglect of his affairs, or his intentional diminution of his financial ability other than in connection with a bona fide and reasonable business undertaking is entitled to have that reduction considered along with the other usual factors, including his general earning capability, in determining his child support obligation.

<u>Id.</u> The Supreme Court, however, reversed this Court because the chancellor's conclusions were supported by the record. The Supreme Court found the chancellor had not refused to reduce child support "merely because he voluntarily changed employment." <u>Id.</u> at 156. Rather, the Supreme Court affirmed the chancellor's role as fact finder when the chancellor determined that the father "accepted the risk involved in being a commissioned stockbroker." <u>Id.</u> Accordingly, the Court affirmed the chancellor's discretion in concluding, "explicitly relying on <u>Edwards v. Lowry</u>, 232 Va. 110 (1986), that the father" had failed to prove he was entitled to a reduction in the support obligation when he made a voluntary "lateral move" with "similar income potential." <u>Id.</u> at 154, 156.

Wife suggests that prior to the 2006 amendment of Code § 20-108.1, analysis for imputation of income for voluntary underemployment was essentially the same for child support and spousal support awards. In 2006, the statutory framework for child support was amended to allow a trial court to impute income to a parent who is voluntarily unemployed or voluntarily underemployed *provided* "that any consideration of imputed income based on a change in a party's employment shall be evaluated with consideration of the good faith and reasonableness of employment decisions made by the party[.]" Code § 20-108.1(B)(3). No similar amendment was made to the statutory framework for spousal support.

- 10 -

Wife argues that, prior to the 2006 amendment, Antonelli "rejected a good faith or reasonable test and has never been overruled.  It [remains] the law in Virginia [for spousal support cases]."  Wife argues that the General Assembly's modification of only the child support statute to require a court to consider the good faith and reasonableness of an employment decision showed the General Assembly's intent to disallow that consideration in spousal support cases.

We agree that Antonelli remains instructive for review of spousal support decisions involving voluntary underemployment.[6]  We disagree, however, with wife's argument that Antonelli "rejected a good faith or reasonable[ness] test" for a court's evaluation of a party's employment decision.  We do not read Antonelli to forbid, as wife suggests, a consideration of the reasons behind an employment decision.  See Antonelli, 242 Va. at 156 (holding that "[o]f

---

[6] This is not to suggest that analysis of child support and spousal support cases should be indiscriminately conflated.  While terms such as "material change of circumstances," "voluntary underemployment," and "imputed income" are used in both contexts, the statutory frameworks for child support and spousal support are not completely analogous.  In deCamp v. deCamp, 64 Va. App. 137, 145 (2014), this Court noted,

> While Code § 20-107.1(E)(1) requires the consideration of the "needs" of the "parties," the statute does not (as the child support statute does) create a mathematical formula primarily reliant on the input of financial data.  Instead, § 20-107.1(E) requires only the factfinder to "consider" the estimated needs of the parties.  By doing so, the statute thus authorizes a flexible, commonsense approach to this aspect of the factfinding exercise.

The statutory guidelines for child support are reliant on "the input of financial data" not only to determine the parent's ability to pay, but also the extent to which "the parent is able to provide more than the basic necessities of life [and] the degree to which the child should reasonably share in his or her parents' prosperity." Niblett v. Niblett, 65 Va. App. 616, 625 (2015) (quoting Conway v. Conway, 10 Va. App. 653, 658 (1990)).  Thus, where a parent has a material increase in income, the statutory "mathematical formula" may indicate an increase in child support.  In contrast, nothing in the framework of Code § 20-107.1 suggests a party is entitled to share in his or her ex-spouse's post-divorce prosperity beyond the point that the party's needs are met.  The spousal support award is based on the needs of, and equities between, the parties.  See Code § 20-109.  The two statutory frameworks thus take into account the difference between the relationship between a parent and child and the relationship between two divorced adults.

course, a father is not prohibited from voluntarily changing employment," but the chancellor, "in the exercise of judicial discretion" did not err in concluding the father had failed to prove the circumstances of that case warranted a reduction of child support). Quite the contrary, the Supreme Court's analysis of Antonelli supports our conclusion that a trial court may consider a party's good faith and reasonable employment decisions, "along with the other usual factors, including [the party's] general earning capability," in determining a support obligation. Id.; see also deCamp v. deCamp, 64 Va. App. 137, 149 (2014) ("Rather, any decision to impute income [on the basis of voluntary underemployment] must be done within a review of *all* the statutory factors concerning spousal support."); Brandau v. Brandau, 52 Va. App. 632, 638 (2008) (holding that consideration of voluntary unemployment or voluntary underemployment is simply one component for the trial court to consider when exercising its discretion in determining spousal support awards). Moreover, we see no principled reason the General Assembly would intend a trial court to make two different factual findings regarding income where a case involved both child support and spousal support. See Blackburn v. Michael, 30 Va. App. 95, 102-03 (1999) (holding it was error for the trial court to impute income for the purposes of modifying child support but to use a different finding of income for purposes of spousal support).

Wife additionally argues that the trial court erred in not looking only to the objective fact that husband signed a "voluntary separation agreement." We do not agree that a trial court is bound by the labels given by employers. The terms "voluntary unemployment" and "voluntary underemployment" have become somewhat terms of art, with the result that the legal definition of "voluntary" does not always align with the common usage of the term. For example, in Edwards, 232 Va. at 112, the Supreme Court found the father "voluntarily" unemployed after he was fired for stealing. In contrast, in Broadhead, 51 Va. App. at 182, a man's departure under a separation agreement was deemed to be not voluntary.

Moreover, we note that while wife placed great emphasis on the "voluntary" nature of husband's departure from employment, the finding of "voluntary" underemployment does not, as wife suggests, *require* the court to leave a prior support award intact. See Murphy v. Murphy, 65 Va. App. 581 (2015) (finding woman's voluntary change to a lower-paying job did not require imputation for child support purposes because the children were benefited in other ways); deCamp, 64 Va. App. at 153 (holding in a spousal support context that a trial court's "determination that imputation was inappropriate in light of the conditions that existed at the time of the final decree" was not an abuse of discretion).  Likewise, even if the trial court deems the departure to be involuntary, the court can consider the facts and circumstances surrounding the departure when determining the spouse's current earning capacity.  See Hollowell v. Hollowell, 6 Va. App. 417, 419 (1988); Code § 20-107.1(E).

C.  Modification of Spousal Support[7]

Finally, wife argues that the court erred in "finding that there was a material change of circumstances supporting a reduction of the award of spousal support" because husband "had sufficient assets and resources from which to pay the spousal support award."

"Having found material changes in the circumstances of the parties, the trial court was required to evaluate whether those changes in circumstances justified a modification in spousal support 'as the circumstances may make proper.'"  Hollowell, 6 Va. App. at 419 (quoting Code § 20-109).  Code § 20-109 says,

> In any action for the increase, decrease, or termination of spousal support, if the court finds that there has been a material change in circumstances, the court may consider the factors set forth in subsection E of [Code] § 20-107.1 and subsection F of this section in making its determination as to whether any modification or termination of such support should be granted.

---

[7] This section addresses wife's sixth, seventh, and eighth assignments of error.

Code § 20-109(G). The court's consideration, thus, includes the thirteen factors listed in Code § 20-107.1(E), which include the "needs and financial resources of the parties," "[t]he property interests of the parties," "[t]he earning capacity . . . and the present employment opportunities for persons possessing such earning capacity," and "[s]uch other factors . . . as are necessary to consider the equities between the parties." Code § 20-109(G) additionally directs that the "court shall further consider the assets or property interests of each of the parties from the date of the support order and up to the time of the hearing on modification or termination, and any income generated from the asset or property interest."

"Spousal support determinations typically involve fact-specific decisions best left in the 'sound discretion' of the trial court." Brandau, 52 Va. App. at 641. "Whether and how much spousal support will be awarded is a matter of discretion for the trial court." McKee v. McKee, 52 Va. App. 482, 494 (2008) (*en banc*) (quoting Barker v. Barker, 27 Va. App. 519, 527 (1998)). "A trial court has broad discretion in setting spousal support and its determination will not be disturbed except for a clear abuse of discretion." Robinson v. Robinson, 50 Va. App. 189, 194 (2007) (quoting Brooks v. Brooks, 27 Va. App. 314, 317 (1998)).

Here, the trial court expressly stated that it considered the statutory factors as they applied to the evidence presented at the hearing and considered the financial needs and earning capacity of both husband and wife. One factor in the trial court's analysis of husband's earning capacity was husband's departure from Verizon and subsequent employment search. Husband testified in detail about his job search and eventual acceptance of a full-time position at CPG. The trial court noted that wife presented no evidence that husband's current earning capacity was greater than his earnings from CPG; nor does the record indicate that wife requested husband to submit to a vocational evaluation. See Code § 20-108.1(H) ("In any proceeding on the issue of determining child or spousal support . . . , when the earning capacity, voluntary unemployment,

- 14 -

or voluntary under-employment of a party is in controversy, the court . . . , upon the motion of any party and for good cause shown, may order a party to submit to a vocational evaluation . . . ."). The evidence supported the trial court's implicit conclusion that husband's current employment was commensurate with his current earning capacity. The court determined that after expenses, husband had about $4,000 left over each month. The court also expressly found that husband had "substantial liquid assets" from which he could pay spousal support if necessary.

The court likewise considered wife's expenses and earning capacity. The court found wife's financial resources and property interests had changed since the last award. The court found it proper to include in wife's monthly income $2,250 in rental income, $2,000 that wife received from her live-in companion, and $150 in investment income. Her monthly income was thus higher by $4,400 at the time of the hearing than at the time of the last support order. The trial court accordingly found that wife's need had decreased by $4,000 per month.[8]

Based on the trial court's findings of the parties' income and expenses, the trial court decreased the spousal support amount by $4,000, which was from $10,000 to $6,000 per month. This award fully met wife's demonstrated needs and also required husband to use his assets to pay the spousal support, since the award was higher than husband's income after expenses.

When considering whether a trial court has abused its discretion the Supreme Court has observed that

> [t]he exercise of discretion . . . presupposes "that, for some
> decisions, conscientious jurists could reach different conclusions

---

[8] In a companion case decided this day, <u>Alan H. Nielsen v. Jacqueline M. Nielsen</u>, No. 0037-21-4 (Va. Ct. App. July 27, 2021), husband appealed the trial court's decision to accept certain of wife's expenses. That decision does not impact the analysis here. Husband had also alleged, and submitted evidence, that wife was underemployed. The trial court declined to impute income to wife, and husband did not appeal that decision. Further, wife did not appeal the trial court's findings that her income had increased and her needs had correspondingly decreased.

- 15 -

based on exactly the same facts — yet still remain entirely reasonable." Thomas v. Commonwealth, 62 Va. App. 104, 111 (2013). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Sauder v. Ferguson, 289 Va. 449, 459 (2015).

Du v. Commonwealth, 292 Va. 555, 564 (2016). The trial court here considered the evidence before it and exercised its discretion in reducing the spousal support award based on the changed circumstances of the parties. Evidence in the record "exists to support the trial court's decision," and this Court therefore will not disturb its ruling.

Both parties request attorney's fees in connection with this appeal.[9] We decline to award attorney's fees to either party. See Harrison v. Harrison, 58 Va. App. 90, 106 (2011).

III. CONCLUSION

The trial court did not err in finding that husband's substantial decrease in income was a material change of circumstances. Evidence in the record supported the trial court's factual finding that husband's departure from Verizon was not "voluntary" for purposes of determining earning capacity. Finally, the trial court did not abuse its discretion in granting husband's motion to modify the spousal support award. Accordingly, we affirm.

Affirmed.

---

[9] Wife's ninth assignment of error argued the trial court erred in denying her motion to reconsider. For the reasons stated in this opinion, the trial court did not err in denying the motion. Wife's tenth "assignment of error" assigns no error but rather requests attorney's fees.

- 16 -